**Bennet MILLER, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ELECTROLUX), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 29, 2007.

Decided Jan. 4, 2008.

Jerry Lyons, Philadelphia, for petitioner.

Victoria S. Maranzini, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge McGINLEY.

Rochelle Miller (Widow), the wife of Bennet Miller, the deceased Claimant,[1] petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which affirmed the decision of the Workers' Compensation Judge (WCJ) to deny her petition to enforce a Compromise and Release Agreement (C & R Agreement).

On June 15, 1989, Claimant sustained a right ankle injury working at Electrolux (Employer).

On January 16, 2004, Employer offered to settle the claim for $25,000 for a full compromise and release.

By letter dated March 24, 2004, Claimant's attorney accepted Employer's offer.

By letter dated April 1, 2004, Employer confirmed that Claimant had accepted the offer. The letter also advised of Employer's belief that Claimant was a Medicare recipient and that Medicare approval was necessary to effectuate the C & R Agreement. Employer requested Claimant's counsel to confirm whether the Claimant was indeed a Medicare recipient. Nineteen months later, on November 25, 2005, Claimant died of unrelated causes. At the time of Claimant's death, the proposed C & R Agreement was not executed by Claimant or Employer, and it was not yet submitted to the WCJ for approval.

Widow filed a claim petition seeking to enforce the C & R Agreement. The matter proceeded before the WCJ who denied the claim petition because the C & R Agreement was not signed or notarized as required by Section 449 of the Workers' Compensation Act (Act), 77 P.S. § 1000.5.[2]

1. While the appeal has been brought in the name of the deceased Claimant, the person who actually seeks the relief requested is Claimant's widow, presumably as the personal representative of the estate of Bennet Miller.

2. Act of June 2, 1915, P.L. 736, *as amended.* Section 449 of the Act provides, in relevant part, that:

(a) Nothing in this act shall impair the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death

(b) Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation

Also, a resolution hearing never took place before a WCJ to confirm that Claimant understood the full legal significance of the settlement agreement as required by Section 449 of the Act, 77 P.S. § 1000.5.

The WCJ concluded that there was no valid C & R Agreement and denied and dismissed the claim petition. The WCJ also found that because Claimant's death was not related to his work-injury his Widow was not authorized to execute the C & R Agreement on his behalf.

Widow appealed to the Board where she argued that the delay in filing the C & R Agreement was caused by Employer's erroneous belief that Medicare approval was required of the proposed compromise and release. Widow maintained that if Employer had not insisted that Medicare approve the settlement, the C & R Agreement would have been signed, notarized and filed before Claimant died. The Board disagreed. First, it held that there was no valid agreement. It was not signed, it was not notarized, and Claimant died prior to the required open hearing before the WCJ. With respect to the delay allegedly caused by Employer, the Board rejected this claim as well. It concluded that the alleged delay caused by Employer's decision to seek Medicare approval did not circumvent the requirement that Claimant satisfy the provisions of Section 449 of the Act, 77 P.S. § 1000.5. The Board further held that Medicare approval was necessary and there was no evidence that Employer's actions were dilatory or in any way a deliberate attempt to delay final approval of the C & R Agreement.

*Section 449 of the Act, 77 P.S. § 1000.5*

■ Failure to satisfy the statutory requirements of Section 449 of the Act, 77 P.S. § 1000.5 precludes approval of a C & R Agreement. Death of a claimant before the requirements of signature, notary and hearing is not recognized in the Act as providing any exception.

In *Blessing v. Workers' Compensation Appeal Board (Heintz)*, 737 A.2d 820 (Pa. Cmwlth.1999), no valid compromise and release agreement existed where the injured worker signed the compromise and release agreement, but died of unrelated causes before his employer signed it and before the Section 449 hearing was held.

In that case, Carol Blessing (Blessing) injured her right knee in the course and scope of her employment with her employer, Heintz. Blessing began receiving compensation pursuant to a NCP dated April 26, 1993. On February 7, 1997, Heintz filed a termination petition. Thereafter, the parties negotiated a settlement whereby Heintz would pay Blessing a lump sum of $35,000.00, without payment of medical expenses. On July 11, 1997, Blessing petitioned to obtain approval of the agreement.

---

*signed by both parties* to the workers' compensation judge for approval. The workers' compensation judge shall consider the petition and the proposed agreement in open hearing and shall render a decision. *The workers' compensation judge shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement.* The agreement must be explicit with regard to the payment, if any, of reasonable, necessary and related medical expenses. Hearings on the issue of a compromise and release shall be expedited by the department, and the decision shall be issued within thirty days.

(c) *Every compromise and release by stipulation shall be in writing and duly executed, and the signature of the employe, widow or widower or dependent shall be attested by two witnesses or acknowledged before a notary public. . . .*

77 P.S. § 1000.5 (emphasis added).

On October 20, 1997, a hearing was held at which counsel for Blessing informed the workers' compensation judge that Blessing had executed the agreement, but died of unrelated causes before Heintz could sign. Heintz withdrew its verbal approval of the proposed agreement and declined to submit the agreement to the workers' compensation judge for approval. Blessing's widow attempted to present evidence that Blessing knew what she was signing. The workers' compensation judge foreclosed the widow from creating a record and dismissed her petition. The Board affirmed. On appeal, this Court found that the proposed agreement and its submission to the workers' compensation judge failed to comport with the requirements of Section 449(b) of the Act, 77 P.S. § 1000.5(b):

> [T]he plain language of Section 449(b) of the Act clearly specifies the requirements of a valid compromise and release agreement: that the *Employer or insurer* are the only parties which may submit a compromise and release agreement to a WCJ for approval; and that such agreement must be *signed by both parties*. In the case at bar, a thorough review of the record reveals that Claimant, *not* Employer, submitted the compromise and release agreement to the WCJ for approval and that such agreement was admittedly signed *only* by Claimant, *not* Claimant *and* Employer. (Emphasis in original).

*Blessing,* 737 A.2d at 822.

In *Lebid v. Workers' Compensation Appeal Board (County of Chester),* 771 A.2d 79 (Pa.Cmwlth.2001), Linda Lebid (Lebid) injured her low back while working as a recreational therapist for a retirement home. She and her employer eventually negotiated a compromise and release. However, Lebid died of a heart condition prior to the scheduled hearing before the workers' compensation judge. At the hearing, her widower submitted the completed agreement by stipulation. It was neither executed by the parties nor witnessed as required by the Section 449 of the Act, 77 P.S. § 1000.5. After considering the matter, the workers' compensation judge dismissed the petition because the statutory requirements had not been met. Lebid's widower appealed to the Board, which affirmed the workers' compensation judge. Because the right of parties to enter into a compromise and release agreement is subject to the provisions in Section 449 of the Act this Court affirmed and noted that it would have been error for the workers' compensation judge to approve an agreement that was not in writing, not executed, and not submitted by the employer.

Similarly, in *Facchine v. Workers' Compensation Appeal Board (Pure Carbon Co. and PMA Group),* 883 A.2d 720 (Pa. Cmwlth.2005) this Court held that an oral agreement to settle a workers' compensation claim was unenforceable because at the time the injured employee died the statutory conditions for approval had not been satisfied. There, Sylvio Facchine (Facchine) contracted chronic obstructive pulmonary disease while working for the Pure Carbon Company (Pure Carbon). About 10 years later, Facchine and Pure Carbon entered into an oral agreement to settle. Pure Carbon's attorney confirmed the agreement in two letters and petitioned for approval of the proposed compromise and release agreement. Before the hearing, Facchine died. At the time of his death, Facchine neither executed a C & R Agreement form (LIBC–755) nor testified at an approval hearing. The petition of Barbara Spinda (Executrix) was denied.

On appeal, Executrix argued that Facchine had "substantially complied" with the requirements of Section 449 of the Act, 77 P.S. § 1000.5, because Facchine under-

stood the factual and legal significance of the Agreement, and the parties confirmed the agreement in writing. This Court agreed with the workers' compensation judge and Board that the statutory requirements had not been satisfied despite the existence of an oral agreement. "[T]he Act specifically mandates 'every' such agreement be in writing signed by the parties. The plain terms of the Act admit of no exceptions, not even for an understanding claimant." *Facchine*, 883 A.2d at 723.

Clearly here, as in the above cases, Claimant died before the requisites of Section 449 of the Act, 77 P.S. § 1000.5, were met. There was no valid CR Agreement for the WCJ to enforce and no Section 449 hearing. There was merely an informal offer and acceptance of the monetary amount of the agreement. Although that portion of the agreement was confirmed in letters between counsel, the full agreement was not reduced to "a writing" in a LIBC–755, the form required to be submitted to the WCJ.[3] There was no document that specified the date of injury, the average weekly wage, the nature of the injury or whether disability was total or partial, the weekly compensation rate payable, or the other specifics that must be included in a Form LIBC–755 pursuant to Section 449 of the Act, 77 P.S. § 1000.5(c)(1)-(11). Moreover, neither Claimant nor Employer executed a C & R Agreement.

█ Widow, nevertheless, asserts that the traditional analysis under Section 449

of the Act, 77 P.S. § 1000.5, does not apply where, as here, the delay in the filing of the C & R Agreement was caused by Employer's mistaken belief that the C & R Agreement had to be "approved" by Medicare.[4] Widow contends that the Board erred when it held that Employer was required to get Medicare approval of the C & R Agreement when: (1) no statute or regulation empowers Medicare to approve a C & R Agreement; (2) the insurer's refusal to file the C & R Agreement after agreeing in writing to settle the case was unconstitutional and prejudicial to Claimant because it deprived Claimant of his settlement; and (3) Claimant's access to the WCJ for approval of the C & R was blocked by Employer's erroneous assumption that Medicare approval of the settlement was necessary.

First, Widow asserts Medicare did not have a "right to approve" the C & R Agreement. She contends that 42 U.S.C. § 1395y(b)(2)(B)(iii) only gives Medicare a "right of subrogation" or an "anticipatory right of subrogation" which was not perfected "because it paid nothing in this case." Widow's Brief at 8. Widow argues that by insisting on Medicare approval, the Employer stalled the process and imposed a condition that was not required by the Act. She asserts that the WCJ and Board failed to consider the legal authority that gives Medicare only a right of subrogation; not a right to approve the compromise and release.

---

3. The Bureau of Workers' Compensation (Bureau) has developed Form LIBC 755 which specifies the statutory requirements of Section 449 of the Act, 77 P.S. § 1000.5. *See* 77 P.S. § 1000.5(d) (requiring the Department of Labor to prepare a form for use by the parties). For the specifics that must be included in Form LIBC–755, *see* 77 P.S. § 1000.5(c)(1)-(11).

4. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994).

The Medicare Secondary Payer Act (MSPA), codified at 42 U.S.C. § 1395y(b)(2)(A)(ii), and Medicare regulations, require that all parties in a workers' compensation case protect Medicare's interests when resolving claims involving *future* medical expenses. Medicare is a secondary payer to workers' compensation and the MSPA prohibits Medicare from making any payment if payment "has been made or can reasonably be expected to be made by the primary payer." To the extent that Medicare has, in the past, made any "conditional payments," Medicare will recover those payments pursuant to 42 C.F.R. § 411.45 and § 411.47. Whenever *future* medical expenses are a component of a compromise and release agreement, as in this case, Medicare's interests must also be considered. 42 C.F.R. § 411.46.[5]

Currently, the Center for Medicare and Medicaid Services (CMS) is responsible for administering Medicare. CMS, through a series of published policy memoranda, established protocols detailing Medicare's position with regard to a claimant's post-compromise and release right to Medicare payments.[6] According to these guidelines, Medicare does not pay for an individual workers' compensation related medical services when the individual receives a workers' compensation settlement that in-cludes funds for future medical expenses. If Medicare's interests are not considered, CMS has a priority right of recovery against any entity that received a portion of a third party payment either directly or indirectly. Medicare may also refuse to pay for medical expenses related to the workers' compensation injury until the entire settlement is exhausted. CMS has advised "[t]o avoid future overpayment negotiations and to protect the injured worker's future Medicare benefits, it is in the best interests of all parties to work together, including Medicare, the WC agencies, attorneys, WC carriers, and claimants." *See* www.cms.hhs.gov/workersComp AgencyServices.

Here, Employer offered to pay and Claimant agreed to accept the lump sum payment of $25,000 *for future indemnity and medical benefits*. It is clear from Employer's offer that it did not intend to remain responsible for claimant's future medical expenses. Employer refused to finalize the C & R Agreement without a guarantee from Medicare that its interests were protected thereby eliminating the risk of potential future liability involving Medicare.[7] As Employer points out, Medicare's approval of the C & R Agreement was a legitimate condition of the parties'

---

**5.** Medicare's concern is that the injured worker will exhaust the settlement proceeds and then submit future medical bills to Medicare for services that should actually be paid by the workers' compensation insurer. Legal Article: Protecting Medicare's Interests, 75 JAN J. Kan. B.A. 18 (2006).

**6.** These Memoranda are available at www.cms.hhs.gov/WorkersCompAgencyServices/.

**7.** Moreover, to accept Widow's position, this Court would be required to assume facts that are not in the record. The WCJ and Board concluded that there was no evidence that Employer's actions were dilatory or in any way a deliberate attempt to delay final approval of the C & R Agreement. Employer

sent Claimant's attorney a letter on April 1, 2004, that confirmed Claimant's acceptance of the lump sum payment of $25,000 for future indemnity and medical benefits. Employer asked Claimant's attorney to confirm that Claimant was a Medicare recipient in its April 1, 2004, letter because it believed Medicare's approval of the proposed C & R Agreement was necessary. However, there is no indication that Claimant's counsel responded either to provide the information or to challenge Employer's belief that Medicare approval was necessary. When Claimant died nineteen months later, before the C & R Agreement was finalized, the issue of Medicare's approval was still unresolved.

compromise and release. It was a condition on which the parties failed to agree.

For a valid C & R Agreement, the parties must agree to all of the terms of the settlement. With the exception of the resolution hearing before a WCJ, a workers' compensation settlement otherwise possess all of the other characteristics and legal implications of a civil settlement. In *Stroehmann Bakeries v. Workers' Compensation Appeal Board (Plouse)*, 768 A.2d 1193, 1196 (Pa.Cmwlth.2001), this Court held that "a C & R should be on equal footing with civil settlements, which are based on a public policy that encourages settlements and stresses finality." As with any contract, it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject-matter, of the agreement. *Mazzella v. Koken*, 559 Pa. 216, 739 A.2d 531, 536–537 (1999). These principles apply equally to C & R Agreements. *Stroehmann Bakeries.*

Because the parties did not agree on whether it was necessary to protect Medicare's interests as a condition of settlement, the agreement was never finalized and there was no C & R Agreement for the WCJ to approve under Section 449 of the Act.[8]

■ Finally, Widow argues that Employer's requirement of Medicare pre-approval of the settlement violated due process. This Court addressed the constitutionality of Section 449 of the Act in *Fratta v. Workers' Compensation Appeal Board (Austin Truck Rental)*, 892 A.2d

888 (Pa.Cmwlth.2006). Specifically, this Court rejected the argument of John Fratta's widow that her substantive and procedural due process rights were violated by not being allowed to participate in the compromise and release process.

There, Fratta signed a compromise and release agreement before a notary. On August 9, 2002, a hearing was scheduled for August 30, 2002. However, Fratta passed away on August 15, 2002 due to a condition unrelated to the work injury. Fratta's employer withdrew its petition seeking approval of the compromise and release agreement. At the August 30, 2002, hearing, widow asked the WCJ to approve the compromise and release agreement. The WCJ denied her request and the Board affirmed.

In this Court, Fratta's widow argued that Section 449 was unconstitutional. This Court held that due process rights are violated when a person is deprived of a constitutionally protected interest through means that are not rationally related to a valid state objective. In finding that the widow's rights were not violated, this Court concluded that "the compromise and release of workers' compensation claims is [not] a constitutionally protected interest." *Fratta*, 892 A.2d at 894. Given this conclusion that a compromise and release is not a constitutionally protected interest, neither Section 449 nor the actions of Employer in this matter deprived Claimant or Widow of their due process rights.

The order of the Board is affirmed.

---

8. Whether Medicare's approval of the C & R Agreement was necessary according to the guidelines in effect in 2004, is not relevant. Claimant's counsel admitted to the WCJ that he still did not "know the relevance or rightness of the [M]edicare issue." Hearing Transcript, March 20, 2006, at 5. The bottom line is that this was an issue for the parties to resolve among themselves and with CMS, the agency responsible for administering Medicare and enforcing the MSPA, before the final C & R Agreement was submitted to the WCJ for approval.

## ORDER

AND NOW, this 4th day of January, 2008, the order of the Workers' Compensation Appeal Board in the above-captioned case is hereby affirmed.