SU HOANG, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (Howmet Aluminum Casting, Inc.), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 15, 2012.

Decided Aug. 20, 2012.

Robert R. Pandaleon, Bethlehem, for petitioner.

Francis J. Sherry, Media, for respondent, Howmet Aluminum Casting, Inc.

BEFORE: COHN JUBELIRER, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Su Hoang (Claimant) petitions for review of the November 7, 2011 order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a workers' compensation judge (WCJ) denying Claimant's review and penalty petitions. For the reasons that follow, we affirm.

Claimant sustained a work-related injury in the nature of right carpal tunnel syndrome on October 5, 2007, while in the course and scope of his employment with Howmet Aluminum Casting, Inc. (Employer). Employer accepted the injury through a notice of compensation payable, and Claimant received benefits in the amount of $557.08 per week based on an average weekly wage of $835.62.

On May 7, 2009, the parties entered into a Compromise and Release (C & R) agreement, (Form LIBC–755, Reproduced Record (R.R.) at 4A–8A), pursuant to which Claimant settled his workers' compensation claim for a lump sum payment of $9,900.[1,2] Of this sum, Claimant was to pay $1,900 to Robert Pandeleon, Esquire, in legal fees.

The parties sought approval of the C & R agreement at a hearing before WCJ Beverly Doneker.[3] During this hearing,

---

1. Section 449(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *added by* the Act of June 24, 1996, P.L. 350, *as amended*, 77 P.S. § 1000.5(a), provides authority for the settlement of workers' compensation cases, stating that "nothing in [the Act] shall impair the right of the parties interested to compromise and release, subject to the provisions herein contained, any and all liability which is claimed to exist under this act on account of injury or death."

2. Pursuant to section 449(d) of the Act, 77 P.S. § 1000.5(d) (requiring the Department of Labor to prepare a form for use by the parties), the Bureau of Workers' Compensation developed Form LIBC–755. Section 449(c) of the Act, 77 P.S. § 1000.5(c), sets forth the specific information that must be included in the form.

3. Section 449(b) of the Act provides as follows:

Upon or after filing a petition, the employer or insurer may submit the proposed compromise and release by stipulation signed by both parties to the [WCJ] for approval. The [WCJ] shall consider the petition and the proposed agreement in open hearing and shall render a decision. *The [WCJ] shall not approve any compromise and release agreement unless he first determines that the claimant understands the full legal significance of the agreement. The agreement must be explicit with regard to the payment, if any, of reasonable, necessary and*

WCJ Doneker, Attorney Pandeleon, and Employer's attorney examined Claimant regarding his understanding of the agreement. With Claimant's son, Lu Hoang, acting as translator, Claimant testified that he understood the C & R agreement. (R.R. at 6A–8A.) Specifically, Claimant stated that he understood that he was giving up his right to any claim for workers' compensation benefits and that "if the Judge approves the settlement that [he] won't be able to come back to [Employer] or the insurance company at a later date for any reason." (R.R. at 7A.) In response to WCJ Doneker's questions, Claimant stated that his son acted as translator when Claimant reviewed the C & R agreement with his attorney and that he was satisfied that all his questions were answered. (R.R. at 9A–10A.) Accordingly, WCJ Doneker found that Claimant understood the legal significance of the agreement and issued a decision on May 8, 2009 approving the C & R agreement. (R.R. at 3A.)

Thereafter, on June 19, 2009, Attorney Pandeleon sent Claimant a letter informing him that a Dr. Nickischer was having trouble receiving payment for a medical bill. (R.R. at 9A.) However, Attorney Pandeleon assured Claimant that, under the terms of the settlement, all past medical bills should have been paid. (*Id.*) On April 30, 2010, Attorney Pandeleon sent Employer's counsel a medical bill from the offices of Dr. William O'Brien, showing a total balance due of $37,674, along with a cover letter stating that Claimant believed Employer had paid all the medical bills at the time of the settlement. (R.R. at 10A–19A.) On May 6, 2010, Attorney Pandeleon sent Employer's counsel another letter claiming to restate a telephone conversation in which Employer's counsel admitted to being unaware of the outstanding bill at the time of the settlement and stated that he was told that the treatment at issue was not related to the work injury. (R.R. at 20A.)

On March 23, 2010, Claimant filed review and penalty petitions, which were assigned to WCJ Bruce K. Doman and decided on documents. In support of his petitions, Claimant argued that the WCJ should rescind the C & R agreement based on a mutual mistake of fact, since, Claimant alleged, both parties were mistaken as to the fact that medical bills remained unpaid as of May 7, 2009. However, the WCJ rejected Claimant's mutual mistake argument, noting that there was no direct evidence that Employer was mistaken at the time the C & R agreement was executed. The WCJ also observed that there had been no discussion of medical expenses at the hearing before WCJ Doneker. Moreover, the WCJ pointed out that the C & R agreement did not contain language acknowledging that all reasonable and necessary medical bills had been paid. Noting that most C & R agreements contain such language, the WCJ found its absence in this agreement "telling."[4] (WCJ's op. at 5.)

*related medical expenses.* Hearings on the issue of a compromise and release shall be expedited by the department, and the decision shall be issued within thirty days.
77 P.S. § 1000.5(b) (emphasis added).

4. Paragraph 9 of Form LIBC–755 ask the parties to "[s]ummarize all of the medical benefits paid, or due and unpaid, to or on behalf of the employee . . . up to the date of this agreement." (R.R. at 5A.) Paragraph 10 asks the parties to "[s]ummarize all benefits to be paid on and after the date of this stipulation or agreement for reasonable and necessary medical treatment causally related to the injury and the length of time such payment of benefits is to continue." (*Id.*) The response provided to each directive was, "See paragraph 18." (*Id.*)

Further, the WCJ found that Claimant offered no evidence that Employer violated the Act. Concluding that the C & R agreement resolved all issues related to Claimant's claim, the WCJ denied Claimant's review and penalty petitions.

Claimant appealed the WCJ's decision to the Board. Specifically, Claimant asserted that the WCJ's Findings of Fact Nos. 7, 8, and 9 (that the C & R agreement did not require Employer to pay the medical bill, that Claimant offered no evidence that Employer violated the Act, and that Claimant offered no credible evidence to demonstrate a mutual mistake of fact), and the WCJ's Conclusion of Law No. 2 (that all issues related to Claimant's claim were resolved by the C & R agreement), were "in error." (R.R. at 12A.) Claimant also contended that the WCJ failed to address Claimant's arguments concerning unilateral mistake and inconsistent contractual terms. Claimant argued that, for these reasons, the WCJ's decision was deficient and the case should be remanded.

However, the Board agreed with the WCJ that Claimant failed to produce clear evidence that Employer was mistaken as to the unpaid bills or that Employer knew of a unilateral mistake on Claimant's part. The Board also rejected Claimant's argument that Paragraphs 13 and 18 of the C & R agreement were contradictory and noted that the language in Paragraph 18 of the C & R agreement explicitly states that it "resolves all indemnity and medical." Like the WCJ, the Board found it significant that the C & R agreement did not

ensure the payment of medical bills. Accordingly, the Board affirmed the WCJ's decision.

On appeal,[5] Claimant argues that this Court should rescind the C & R agreement based on a mutual mistake of fact regarding the unpaid medical bills. Alternatively, Claimant argues that the C & R agreement should be rescinded based on a unilateral mistake of fact, asserting that Employer had good reason to know of Claimant's mistake and that enforcement of the C & R agreement would be unconscionable. Claimant also argues that there are inconsistent terms in the C & R agreement requiring this Court to construe the agreement in his favor.

According to Claimant, credible evidence established that both parties were mistaken regarding the fact that medical bills remained unpaid as of May 7, 2009. Claimant argues that this fact is material and has a material effect on the parties' bargain because the medical bills are substantial and Employer was obligated to pay them under the Act. Based on these assertions of mutual mistake, Claimant argues that this Court should rescind the C & R agreement.

■■■■ Courts may rescind a compromise and release agreement based on a clear showing of fraud, deception, duress, or mutual mistake. *North Penn Sanitation, Inc. v. Workers' Compensation Appeal Board (Dillard)*, 850 A.2d 795, 799 (Pa.Cmwlth.2004).[6] However, the party seeking to set aside the agreement has the

5. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

6. Claimant cites *Consolidated Rail Corp. v. Portlight, Inc.*, 188 F.3d 93 (3d Cir.1999),

*Sanders v. Lawn Mutual Ins. Co.*, 194 Pa.Super. 491, 168 A.2d 758 (1961), and *Ehrenzeller v. Chubb*, 171 Pa.Super. 460, 90 A.2d 286 (1952), to support his mutual mistake of fact argument. However, Claimant provides neither analogy nor discussion of the facts of these or any of the cases cited in his brief.

burden of proof, and the test to set aside a compromise and release on the basis of mistake is more stringent than for fraud or duress. *Id.* Indeed, evidence demonstrating a mutual mistake must be clear, precise and indubitable. *Thrasher v. Rothrock,* 377 Pa. 562, 105 A.2d 600 (1954) (holding that evidence of a confusing dictation of contract terms was not clear, precise and indubitable evidence of a mutual mistake).

In *North Penn Sanitation,* this Court upheld a WCJ's determination of mutual mistake in a C & R agreement where the agreement failed to include blindness among the claimant's work-related injuries. The claimant in that case proceeded *pro se* and was unable to read the agreement due to his blindness. Although the C & R stated that the settlement of $50,000 was a "full, final and complete settlement, compromise and release of any and all claims for disability and medical compensation, past, present and future," (*Id.* at 796), the WCJ concluded that the agreement was based on the material mistake of fact that blindness was not part of the claimant's work injuries.

In affirming that decision, we observed that the claimant had presented credible testimony and medical evidence establishing that he had lost the use of both eyes for all intents and purposes as the result of a work injury. We also cited evidence demonstrating that the employer's insurer was aware of the claimant's injuries before the parties negotiated the settlement agreement. Although the claimant in *North Penn Sanitation* raised no objection to the agreement during the hearing, this Court noted that the claimant was unable to read the agreement due to his disability and that he did not receive independent legal advice but relied upon the representations of the insurer that his existing injuries were fully set forth in the agreement.

 In contrast to the facts in *North Penn Sanitation,* in this case, Claimant failed to produce any credible evidence showing that Employer was mistaken regarding the unpaid medical bill at the time of settlement. Claimant relies entirely on two letters subsequently authored by Attorney Pandeleon to Employer's counsel, only one of which even alleges that a statement was made by Employer's counsel regarding Employer's beliefs at the time of settlement. (R.R. at 19A–20A.) The WCJ rejected Claimant's evidence as not credible[7] and noted that medical bills were neither mentioned in the C & R agreement nor at the hearing before WCJ Doneker. Thus, the present case is distinguishable from *North Penn Sanitation* based on its comparative lack of evidence.

Alternatively, Claimant argues that he operated under a unilateral mistake regarding a material element of the agreement—the unpaid medical bills—and that Employer had good reason to know of Claimant's mistake at the time of settlement. Therefore, Claimant argues that the C & R agreement should be rescinded based on the doctrine of unilateral mistake of fact.

 We addressed this issue briefly in *Farner v. Workers' Compensation Appeal Board (Rockwell International),* 869 A.2d 1075 (Pa.Cmwlth.2005), in which we held that collateral estoppel barred a claimant's petition to set aside a C & R agreement on the basis of mutual mistake.[8]

---

**7.** It is a fundamental principle of workers' compensation law that the WCJ is the final arbiter of witness credibility and evidentiary weight. *Vols v. Workmen's Compensation Appeal Board (Alperin, Inc.),* 161 Pa.Cmwlth. 497, 637 A.2d 711 (1994).

**8.** Employer cites *Farner* but does not argue that collateral estoppel applies in this case.

Claimant also argues that she is entitled to relief under the doctrine of unilateral mistake. We disagree on legal and factual grounds. Legally, collateral estoppel applies and precludes re-litigation of the prior finding that Claimant understood the full legal significance of the C & R Agreement. Factually, unilateral mistake supporting relief was not proven. Generally, a unilateral mistake which is not caused by the fault of the opposing party affords no basis for relief. *Welsh v. State Employees' Retirement Bd.*, 808 A.2d 261 (Pa.Cmwlth. 2002). However, "if a party to a contract knows or has reason to know of a unilateral mistake by the other party and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed." *Id.* at 265. *See also Growth Horizons, Inc. v. Workers' Compensation Appeal Board (Hall)*, 767 A.2d 619 (Pa.Cmwlth.2001). Claimant here failed to present any evidence of Employer's intent, and the WCJ made no findings as to Employer's intent. Without supporting evidence and a finding of actual intent, it is impossible for Claimant to carry her burden under the doctrine of unilateral mistake.

*Farner*, 869 A.2d at 1079 n. 5. Similarly, Claimant here presented no credible evidence concerning Employer's intent.[9]

Moreover, the record contains no evidence that Claimant communicated to Employer, before or at the time of settlement, his belief that the C & R agreement did not apply to unpaid pre-existing medical bills. In this case, there simply is no evidence that Employer knew or should have known of Claimant's mistake regarding the unpaid medical bills.

■ Finally, Claimant contends that Paragraphs 13 and 18 of the C & R agreement conflict and, therefore, the agreement should be construed as foreclosing only future medical claims while preserving past medical claims. We disagree.

Paragraph 13 asks for a list of "all benefits received by, or available to [Claimant]; e.g. Social Security (Disability or Retirement), private health insurance, Medicare, Medicaid, etc." (R.R. at 6A.) In relevant part, the response to that request states as follows:

Claimant asserts that he is not receiving Social Security disability benefits, Medicare benefits or Medicaid benefits, nor has he applied for [the] same, nor is he eligible.

*The purpose of this settlement agreement is to provide [Claimant] with funds that will compensate [him] for future workers' compensation benefits, including medical benefits, and which will foreclose the employer/insurer's re-*

---

**9.** Compare *Lanci v. Metropolitan Insurance Co.*, 388 Pa.Super. 1, 564 A.2d 972 (1989). In *Lanci*, the appellee was injured in an automobile accident and settled a claim with his insurer for $15,000. The trial court accepted the appellee's assertion that he signed the settlement agreement under the mistaken belief that his policy limit was $15,000 rather than the actual limit of $250,000. The trial court also relied on correspondence from the appellee's attorney to his insurer memorializing a conversation in which the insurer admitted to representing to the appellee that $15,000 was his policy limit. The trial court

rescinded the settlement agreement based on mutual and unilateral mistake. On appeal, the Superior Court affirmed the rescission of the settlement agreement on the basis of unilateral mistake. The court determined that the insurer knew that the appellee did not possess a copy of his policy. That fact, coupled with the appellee's correspondence with the insurer, indicated that the insurer knew or should have known that the appellee mistakenly believed his policy limit was $15,000. Unlike the appellee in *Lanci*, Claimant offered no credible evidence demonstrating a mistake on his part.

sponsibility for such benefits. It is not the purpose of this settlement to shift to Medicare the responsibility for payment of medical expenses for the treatment of work-related conditions.

... Claimant continues to suffer a disability as a result of the October 5, 2007 work injury. Therefore, the sum of $9,900.00 represents a Compromise and Release of all future wage loss claims for the Workers' Compensation benefits due Claimant. This sum is compensation for all wage loss disability benefits for the rest of his life arising out of the October 5, 2007 work injury.... [E]ven though the above amount is paid in one lump sum, Claimant's monthly workers' compensation benefits, for purposes of determining offset by the Social Security Administration shall be $27.30 (net amount to [Claimant]: $8,000 = $27.30 per month for 293 months....).

(R.R. at 6A–7A) (emphasis added).

In its entirety, Paragraph 18 ("Miscellaneous provisions, if any") states as follows:

*This Agreement resolves all indemnity and medical to which [Claimant] may have been entitled for any injury that [Claimant] sustained while working for [Employer]. This represents a full and final settlement of any claim, both past, present, and future, that [Claimant] had against [Employer].* Claimant understands that even if his medical condition might worsen, he cannot return and try to reopen this claim or file additional petitions, as this is a full and final settlement of any and all claims.

Out of the $9,000 sum, [Claimant's counsel] will receive the sum of $1,900. Claimant will receive $8,000. This represents a full and final settlement of Claimant's Workers' Compensation claim. As such, [Claimant] is forever barred from attempting to receive any additional Workers' Compensation benefits other than the $9,900 recited herein. Claimant stipulates that [Employer's] contest has been reasonable at all times material hereto.

Claimant agrees to waive his appeal period, having been advised of the ramifications of the same by his attorney and in waiving said right, does so under the advice of his attorney. Claimant, in entering into this Agreement, agrees that he is forever barred from attempting to expand the description of his injury or to seek any other benefits for this Workers' Compensation claim.

(R.R. at 6A–7A) (emphasis added).

Claimant asserts that these paragraphs conflict and that the terms of Paragraph 13 are more specific than the terms of Paragraph 18. Citing *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556 (3d Cir.1973), and *First National Bank v. Davies*, 315 Pa. 59, 172 A. 296 (1934), Claimant states that where there is conflict between general and specific contractual provisions, courts will apply the specific provisions. Therefore, Claimant argues that we should rely on Paragraph 13 and construe the C & R agreement to foreclose only Employer's responsibility for future medical bills.

Citing *Betterman v. American Stores Co.*, 367 Pa. 193, 80 A.2d 66 (1951),[10]

10. In *Betterman*, the plaintiff truck driver sued his employer for breach of contract based on failure to pay compensation outlined in the contract and recovered a judgment on a jury verdict. The trial court denied the employer's request for judgment n.o.v. or a new trial, and the employer appealed. On appeal, our Supreme Court noted an ambiguity in the contract language providing compensation. The court cited the elementary proposition that, where a written contract is susceptible of two reasonable constructions, it

Claimant also argues that in cases of doubt, courts will construe contracts against the drafter. Citing *Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463 (1966),[11] Claimant further argues that where a contract reduces a party's legal rights, courts will construe the contract in that party's favor and require the intentions of the party to be spelled out with utmost particularity. Based on Claimant's assertion that the two paragraphs conflict, Claimant contends that this Court should construe the C & R agreement against Employer and in favor of Claimant, particularly where the agreement gives up his legal right to workers' compensation benefits.

We find Claimant's general statements of the law unpersuasive. In this case, Claimant has failed to demonstrate conflicting language that would require this Court to interpret the C & R agreement as applying only to future medical expenses. Although Paragraph 13 makes no reference to future medical bills, the apparent primary purpose of Paragraph 13 is to address established or potential claims that may exist by virtue of payments received by or available to Claimant from another source.[12]

Moreover, Paragraph 9 of the C & R agreement specifically directs the parties to summarize "the medical benefits paid, or due and unpaid" up to the date of the agreement. The response, "See paragraph 18," refers to a provision expressly stating that the C & R agreement "resolves all indemnity and medical to which [Claimant] may have been entitled ... [and] represents a full and final settlement of any claim, both [sic] past, present and future, that [Claimant] had against [Employer.]" (R.R. at 5A–7A.) We conclude that this language sufficiently spells out

---

11. *Galligan* involved a tenant who sued her landlord for injuries she suffered after tripping on the lawn. The trial court dismissed the tenant's action for trespass based on an exculpatory clause contained in the parties' lease. On appeal, our Supreme Court reversed, noting that the exculpatory clause relieved the landlord's liability with respect to a number of specifically enumerated locations but did not include the lawn. (*Id.* at 465). The court stated that an agreement which reduces legal rights that would otherwise exist is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties.

should, in case of doubt, be interpreted against the party who has drawn it. *Id.* Highlighting the fact that the plaintiff was unrepresented and that the contract was drafted by the employer's experienced attorney, the court construed the contract in favor of the plaintiff. *Id.* Furthermore, the court noted that in ascertaining the intention of the parties, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. *Id.*

(*Id.*). Because the detailed list of locations covered by the clause did not include the lawn, the court concluded that the exculpatory clause did not apply. (*Id.*).

12. As we observed in *Miller v. Workers' Compensation Appeal Board (Electrolux)*, 940 A.2d 603 (Pa.Cmwlth.2008):

The Medicare Secondary Payer Act (MSPA), codified at 42 U.S.C. § 1395y(b)(2)(A)(ii), and Medicare regulations, require that all parties in a workers' compensation case protect Medicare's interests when resolving claims involving *future* medical expenses. Medicare is a secondary payer to workers' compensation and the MSPA prohibits Medicare from making any payment if payment "has been made or can reasonably be expected to be paid by the primary payer." To the extent that Medicare has, in the past, made any "conditional payments," Medicare will recover those payments pursuant to 42 C.F.R. § 411.45 and § 411.47. Whenever *future* medical expenses are a component of a compromise and release agreement, as in this case, Medicare's interests must also be considered. 42 C.F.R. § 411.46.

*Miller*, 940 A.2d at 608 (emphasis in original).

the intent of the parties as contemplated in *Galligan*. In addition, unlike the plaintiff in *Betterman,* Claimant was represented by an attorney when the C & R was drafted and could have provided for the payment of prior medical expenses in the agreement.

As set forth above, our review of the record confirms that Claimant failed to demonstrate mutual mistake, unilateral mistake, or inconsistent terms warranting rescission of the C & R agreement.

Accordingly, we affirm.

### ORDER

AND NOW, this 20th day of August, 2012, the order of the Workers' Compensation Appeal Board, dated November 7, 2011, is affirmed.