# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Hymms, : 
              Petitioner : 
    : 
    : 
      v. : 
    : 
Commonwealth of Pennsylvania : 
(Workers' Compensation Appeal : 
Board), :   No. 909 C.D. 2021
         Respondent :   Submitted: March 18, 2022


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge


OPINION
BY JUDGE FIZZANO CANNON      FILED: August 11, 2022


James Hymms (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) approval of a Compromise and Release Agreement (C & R Agreement) executed by Claimant and the Commonwealth of Pennsylvania (Employer).[1] Claimant contends that the agreed upon settlement amount was calculated incorrectly, thus requiring this Court to remand to the WCJ for a hearing to determine whether the parties made a mutual mistake. Following review, we affirm.

---

[1] Employer's interests were executed through Inservco Insurance Services, Inc. *See* Reproduced Record (R.R.) at 19a.

Claimant filed[2] a *pro se* claim petition alleging that on January 21, 2020, he got dizzy and fell at work, hit his head on a wall, and sustained a loss of hearing. Reproduced Record (R.R.) at 5a-6a. On March 19, 2020, Employer filed an answer denying Claimant's allegations. *Id.* at 11a-12a. On September 24, 2020, Claimant, now represented by counsel (Counsel), and Employer entered into a C & R Agreement pursuant to the provisions of the Workers' Compensation Act (Act).[3] The C & R Agreement states that Claimant suffered a binaural hearing loss on January 21, 2020, and that the Agreement will resolve "all claims . . . for specific loss / hearing loss benefits" for a lump sum payment of $34,000, minus counsel fees of $6,800, for a net total payment of $27,200. C & R Agreement ¶¶ 1, 4, 10; R.R. at 19a-20a. Additionally, Employer would remain responsible for Claimant's binaural hearing loss medical benefits for one year after the WCJ hearing, up to, but not on or after, October 5, 2021. C & R Agreement ¶ 10 & Addendum; R.R. at 20a, 23a.

A telephonic hearing was held on October 5, 2020, before the WCJ regarding approval of the C & R Agreement. Claimant testified that he read and signed the C & R Agreement, with consultation from Counsel. Hearing of 10/5/2020, Notes of Testimony (N.T.) at 7; R.R. at 73a. The WCJ had Claimant look at the C & R Agreement and asked if he understood that he was settling all of his rights to hearing loss benefits for a lump sum "reflected on the second page, paragraph ten[,]" minus the amount to be paid to Counsel. N.T. at 7-8; R.R. at 73a-74a. Claimant responded "[y]es." N.T. at 8; R.R. at 74a. Claimant was also asked if he understood that Employer would remain responsible for medical treatment for

---

[2] It appears that the claim petition was received by the Workers' Compensation Office of Adjudication on March 9, 2020. R.R. at 7a.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1, 2501-2710.

his hearing loss for one year, after which it would become Claimant's responsibility. Claimant again responded "[y]es." *Id.* Additionally, Employer's counsel advised that the C & R Agreement did not reflect that Employer would reimburse Claimant for out-of-pocket medical expenses. N.T. at 9; R.R. at 75a. However, Employer would reimburse Claimant once he submitted the necessary receipts and invoices. *Id.*

The WCJ then informed Claimant that once she approved the C & R Agreement, Claimant would "not be able to come back to Workers' Compensation for any money relating to this injury . . . except for what was agreed to with the medical bills." N.T. at 11; R.R. at 77a. Moreover, she explained, even "if at some time in the future you believe you settled for too little money, it is still over when I approve it." *Id.* Claimant acknowledged this and affirmed that he still wanted to settle his case. *Id.*

On October 8, 2020, the WCJ granted the petition to enter into a C & R Agreement. WCJ 10/8/2020 Decision & Order, R.R. at 15a-18a. Specifically, the WCJ found that Claimant understood the full legal significance of the C & R Agreement and understood the effect it would have on future payments of compensation and medical expenses. *Id.*, Finding of Fact (F.F.) No. 2.

On October 28, 2020, Claimant appealed to the Board. R.R. at 28a-31a. Therein, Claimant contended that the parties agreed on a formula consistent with Section 306(c)(8)(ii) of the Act, 77 P.S. §513(8)(ii) (establishing specific loss benefits for permanent loss of hearing not caused by occupational noise, but due to other occupational causes).[4] However, he claimed that the parties "mutually made

---

[4] Section 306(c)(8)(ii) of the Act sets forth, *inter alia*, the following formula: "[t]he number of weeks for which compensation shall be payable for such loss of hearing in both ears shall be determined by multiplying the percentage of impairment by two hundred sixty weeks." 77 P.S. § 513(8)(ii). Claimant's percentage of impairment is not part of the certified record.

computational errors by which the amount set forth in the [C & R Agreement] did not capture the intent of the parties." *Id.* at 29a. Claimant denied that the mistake was due to "fraud, deception, duress[,] or any other type of similar misbehavior." *Id.* On November 2, 2020, Employer responded to Claimant's appeal.[5] *Id.* at 36a-37a. Employer stated that Claimant's appeal was meritless because he was "contesting the dollar amount reflected in the [C & R] Agreement. There is no mutual mistake as alleged by counsel." *Id.* at 36a. Further, Employer argued, Claimant understood the legal significance of the C & R Agreement. *Id.*

On July 15, 2021, the Board issued its opinion. R.R. at 42a-49a. Noting that the C & R Agreement can only be set aside upon clear proof of fraud, deception, duress, mutual mistake, or unilateral mistake caused by the opposing party, the Board reiterated Claimant's testimony and found that he failed to satisfy his burden. *Id.* at 45a-48a. Specifically, the Board reasoned that the C & R Agreement did not mention an examination by a specialist, any percentages of hearing loss attributable to each ear, or the utilization of formulas for purposes of calculating the lump sum settlement. *Id.* at 48a. Further, none of those items were mentioned at the hearing before the WCJ on approval of the C & R Agreement. *Id.* Rather, the C & R Agreement simply stated that Claimant agreed to settle his claim for $34,000, minus attorney's fees, and Claimant admitted that he signed the Agreement freely and understood what he was signing. *Id.* Moreover, Claimant reviewed the C & R Agreement with Counsel, and the WCJ specifically found that Claimant understood the effect and legal significance of the C & R Agreement, and she therefore approved

---

[5] While Employer characterized its filing as a "cross appeal," Employer's response to Claimant's appeal did not challenge the WCJ's decision, but instead simply denied the averments of Claimant's appeal of the WCJ's decision and requested that the decision be affirmed. R.R. at 36a.

it. *Id.* The Board also noted Employer's response that the parties never intended to use a formula. *Id.* Accordingly, in the absence of any evidence to support his claim, the Board declined Claimant's invitation to consider matters not contained within either the C & R Agreement or in the record and determined that Claimant failed to meet his burden of proving mutual mistake. *Id.* It therefore affirmed the WCJ's decision approving the C & R Agreement. *Id.* at 48a-49a.

Claimant now petitions this Court for review of the Board's order. Claimant contends that either (1) a mutual mistake, or (2) a unilateral mistake that converted into a mutual mistake occurred regarding the calculation of his lump sum payment contained in the C & R Agreement. He asks that this Court remand the case to the WCJ for a hearing to determine whether a cognizable mutual mistake occurred.

We begin with a review of the law. Section 449 of the Act, 77 P.S. § 1000.5,[6] governs the compromise and release of workers' compensation claims. This section provides that settlement agreements are not valid or binding until approved by a WCJ. *Id.* Further, "[t]he [WCJ] shall not approve any [C & R] agreement unless he first determines that the claimant understands the full legal significance of the agreement." 77 P.S. § 1000.5(b).[7] It is well established that once approved, a valid C & R agreement is final, conclusive, and binding on the parties. *Dep't of Lab. & Indus., Bureau of Workers' Comp. v. Workers' Comp. Appeal Bd. (Ethan-Allen Eldridge Div.)*, 972 A.2d 1268, 1271 n.2 (Pa. Cmwlth. 2009). At

___

[6] Added by the Act of June 24, 1996, P.L. 350.

[7] We have previously observed that in enacting Section 449 of the Act, the legislature intended a C & R agreement to be "on equal footing with civil settlements, which are based on a public policy that encourages settlements and stresses finality." *Stroehmann Bakeries, Inc. v. Workers' Comp. Appeal Bd. (Plouse),* 768 A.2d 1193, 1196 (Pa. Cmwlth. 2001).

5

common law, a C & R "agreement can be set aside only upon a clear showing of fraud, deception, duress, or mutual mistake." *Farner v. Workers' Comp. Appeal Bd. (Rockwell Int'l)*, 869 A.2d 1075, 1078 (Pa. Cmwlth. 2005). Courts may rescind a C & R agreement based on a clear showing of fraud, deception, duress, or mutual mistake. *Hoang v. Workers' Comp. Appeal Bd. (Howmet Aluminum Casting, Inc.)*, 51 A.3d 905, 908 (Pa. Cmwlth. 2012). "Compared to fraud, deception[,] or duress, the test to set aside a C & R agreement on the basis of mutual mistake is more stringent." *Farner*, 869 A.2d at 1078. Therefore, "in order for mutual mistake to constitute a basis for invalidating a C & R agreement, the party seeking to set aside the agreement must prove both parties are mistaken as to a present, material fact that existed at the time the agreement was executed." *Id.* at 1078-79. Moreover, "evidence demonstrating a mutual mistake must be clear, precise[,] and indubitable." *Hoang*, 51 A.3d at 909. If a unilateral mistake is alleged, to afford relief, it generally must be the opposing party's fault. *Farner*, 869 A.2d at 1078 n.5. However, "[i]f a party to a contract knows or has reason to know of a unilateral mistake by the other party and the mistake, as well as the actual intent of the parties, is clearly shown, relief will be granted to the same extent as if a mutual mistake existed." *Welsh v. State Emps. Ret. Bd.*, 808 A.2d 261, 265 (Pa. Cmwlth. 2002). The party seeking to set aside the agreement has the burden of proof. *N. Penn Sanitation, Inc. v. Workers' Comp. Appeal Bd. (Dillard)*, 850 A.2d 795, 799 (Pa. Cmwlth. 2004).

In his brief, Claimant argues that he is entitled to relief based on the doctrine of mutual mistake. He explains that at all times up to and including at the hearing, he and his Counsel[8] believed that the $34,000 lump sum payment listed in

---

[8] Claimant's brief was drafted by Robert Land, Esquire, who was Counsel below and signed the C & R Agreement as such. R.R. at 22a.

the C & R Agreement was correct. Claimant's Br. at 7. However, he explains further that only after the hearing, and during the appeal period, did he and his Counsel realize their, and Employer's, error regarding the calculation of the lump sum payment. *Id.* Specifically, Claimant contends that "[t]here was total agreement between the parties regarding [Claimant's specialist's] evaluation of hearing loss percentages[,]" and that the lump sum payment should have been calculated pursuant to those percentages and in accordance with the formula set forth in Section 306(c)(8)(ii) of the Act, 77 P.S. § 513(8)(ii). *Id.* Thus, Claimant asserts that the $34,000 lump sum payment memorialized in the C & R Agreement is incorrect, and that the total amount should actually be $36,377.57. *Id.* at 6-9. Alternatively, Claimant appears to argue that the error constitutes a unilateral mistake on Employer's part because it had reason to know, by virtue of having relied on the specialist's calculations and the Act's formula in calculating the lump sum payment, that $34,000 was not the correct amount. *Id.* at 9.

Employer responds that Claimant is unable to prove that a mutual mistake occurred. Employer highlights that, before the WCJ, Claimant agreed to the $34,000 lump sum payment, and that the WCJ found that Claimant understood the terms and legal significance of the C & R Agreement and approved it. Employer's Br. at 9-12. Employer also points out that the record contains no evidence of the parties' purported agreement that the lump sum payment was based on a formula or the findings made by a specialist. *Id.* Moreover, the record and the C & R Agreement are devoid of anything suggesting a mutual mistake. *Id.* Thus, according to Employer, Claimant cannot meet his burden of proof. *Id.*

We find *McGinley v. Workers' Compensation Appeal Board (County of Delaware)* (Pa. Cmwlth., No. 1082 C.D. 2015, filed March 7, 2016),[9] relevant to Claimant's allegations regarding the doctrine of mistake. There, the claimant entered into a C & R agreement (agreement) wherein the parties agreed to resolve the claimant's wage loss and medical benefits through a lump sum payment of $81,000. The agreement also provided, *inter alia*, that the employer would pay the claimant an additional $19,000 "for payment of any and all medical bills and any and all outstanding liens against" her, which would resolve all of her claims for past, present, and future medical benefits and/or any liens against her. *Id.*, slip op. at 3-4. At the hearing before the WCJ, the claimant agreed that she understood she would receive $19,000 under the agreement to cover her medical bills. *Id.*, slip op. at 5-9. The claimant also acknowledged that her outstanding medical bills exceeded that amount. *Id.* However, the outstanding amounts had been negotiated with the medical providers, and the $19,000 would cover all of the outstanding bills. *Id.* The claimant's counsel advised the WCJ that she had negotiated the outstanding medical debt and had agreements with the medical providers that $19,000 would cover the debt. *Id.* The WCJ ultimately approved the parties' agreement, finding that the claimant fully understood its legal significance. *Id.*, slip op. at 9.

The claimant, through new counsel, appealed to the Board, claiming that she did not understand the full legal significance of the agreement and that her former counsel's representations regarding the amount of the outstanding medical bills were false. *McGinley*, slip op. at 9-10. The Board determined that the claimant failed to meet her burden of establishing the existence of a mutual mistake, or a

---

[9] *McGinley* is cited for its persuasive value pursuant to Section 414(a) of this Court's Internal Operating Procedures. *See* 210 Pa. Code § 69.414(a).

unilateral mistake of which her employer was aware, and that she asserted only acts of negligence by her former counsel and disputes regarding medical bills rather than any claims of fraud or duress. *Id.*, slip op. at 10. Concluding that the claimant understood the full legal significance of the agreement, the Board affirmed the WCJ's order approving the agreement. *Id.*

The claimant appealed to this Court, again arguing that the WCJ's order should be reversed because she did not understand the legal significance of the agreement. *McGinley*, slip op. at 10-11. Specifically, she asserted that she submitted credible evidence to the Board showing that her former counsel had not in fact resolved the medical bills prior to the hearing, but the Board refused to consider such evidence because it was not of record. *Id.*, slip op. at 11. She claimed it would have been impossible to present this evidence at the hearing, as it did not surface until after approval of the agreement by the WCJ. *Id.*

In affirming the Board's decision, we determined that the claimant failed to meet her burden of proving a unilateral mistake by the employer[10] occurred, because she failed to assert that her employer knew or should have known that its payment of $19,000 was insufficient to cover all of the claimant's medical bills. *McGinley*, slip op. at 13-16. We pointed out the claimant's acknowledgment at the hearing that $19,000 was the limit of her employer's obligation under the agreement even despite that her medical bills exceeded that amount. *Id.*, slip op. at 13-14. Further, we noted, she attributed blame not to her employer, but to her former counsel's purported misrepresentations concerning the claimant's outstanding medical bills. *Id.* We also observed that while the claimant's claims sounded in

---

[10] Before this Court, the claimant no longer argued that a mutual mistake occurred. *McGinley*, slip op. at 13.

legal malpractice, and that she may have been mistaken herself at the time she entered into the agreement, the claimant failed to establish her employer's "knowledge of her mistake or intent at the time they entered into the [a]greement." *Id.*, slip op. at 14. Based upon the testimony at the WCJ hearing and the express language of the agreement, we held that the WCJ's determination that the claimant fully understood the legal significance and effect of the agreement was supported by substantial evidence. *Id.*, slip op. at 14-16.

In *Hoang*, the claimant also attempted to set aside an agreement based on both unilateral and mutual mistake. Under the agreement in that case, the claimant settled his claim for a lump sum payment of $9,900, minus attorney's fees, and it was approved by a WCJ. 51 A.3d at 906-07. Thereafter, the claimant learned he had an outstanding medical bill of $37,674. *Id.* at 907. The claimant then filed a review petition,[11] which was assigned to a different WCJ, arguing that the agreement should be rescinded due to mutual mistake of fact because both parties were unaware that there was an outstanding medical bill. *Id.* at 907-08. The WCJ, deciding the case on the papers without holding a second hearing, rejected that a mutual mistake occurred, finding there was no direct evidence that the employer was mistaken at the time the agreement was executed. *Id.* The WCJ also observed that there had been no discussion about medical expenses at the WCJ hearing on approval of the agreement, and that the agreement did not contain language acknowledging that all medical bills had been paid. *Id.* As such, the WCJ denied the claimant's review petition. *Id.* at 908.

The claimant appealed to the Board, asserting, *inter alia*, that the WCJ erred in his findings and conclusions with respect to mutual mistake and neglected

---

[11] The claimant also filed a penalty petition, which was denied.

to address his claims of unilateral mistake. *Hoang*, 51 A.3d at 908. The Board determined that the claimant failed to present clear evidence that the employer was mistaken regarding the unpaid bills or that the employer was aware of a mistake on the claimant's part, thereby negating his claims of mutual or unilateral mistake. *Id.*

Before this Court, the claimant argued that the agreement should be rescinded based on either a mutual or a unilateral mistake of fact. *Hoang*, 51 A.3d at 908. In affirming the decision of the WCJ, we first rejected that the claimant established a mutual mistake occurred, noting that he failed to establish with any credible evidence that the employer "was mistaken regarding the unpaid medical bill at the time of settlement." *Id.* at 909. We also noted that the WCJ rejected, as not credible, the claimant's evidence purporting to show the employer's beliefs at the time of settlement, and that the medical bills were neither mentioned in the agreement nor discussed at the first WCJ hearing on approval of the agreement. *Id.*

As to the claimant's assertion that the agreement should be rescinded because he operated under a unilateral mistake regarding the unpaid medical bills, which we also rejected, we observed that the claimant failed to present any credible evidence regarding the employer's intent. Further, the record contained no evidence that the claimant communicated to his employer his belief that the agreement did not apply to unpaid medical bills or that the employer knew or should have known of the claimant's mistaken belief regarding the unpaid medical bills. *Hoang*, 51 A.3d at 910-13. Accordingly, because the claimant failed to meet his burden of demonstrating mutual or unilateral mistake, we affirmed the Board's order. *Id.* at 913.

In the instant matter, Claimant argues that a mutual or unilateral mistake was made. First, regarding Claimant's claim of mutual mistake, Claimant

11

"must prove both parties are mistaken as to a present, material fact that existed at the time the agreement was executed." *Farner*, 869 A.2d at 1078-79. In his brief, Claimant states that he believed the lump sum payment of $34,000 was correct at the time he testified before the WCJ because he thought it was based on the hearing loss percentages determined by his specialist. He claims that Employer was in "total agreement" with the specialist's hearing loss percentages. Claimant's Br. at 7. In its brief, Employer denies Claimant's theory that there was a mutual mistake regarding the lump sum payment in this case, as the record evidence, including the C & R Agreement and Claimant's own testimony, is devoid of any indication that the parties agreed to utilize a formula in accordance with Claimant's specialist's findings in calculating the lump sum payment or that Employer was even aware of such agreement. Employer submits that "[b]uyer's remorse is not a reason to set aside a C & R [agreement]," and that, while the C & R Agreement in this case may have been less than satisfactory in Claimant's view, "this does not amount to a showing of fraud, deception, duress, or mutual mistake of fact." Employer's Br. at 12. We agree with Employer.

As in *Hoang*, there is no evidence of record supporting Claimant's claim of mutual mistake. The C & R Agreement does not mention Claimant's specialist or a formula, and Claimant's specialist's findings were not submitted into evidence before the WCJ. Moreover, at the hearing before the WCJ, Claimant testified that he understood he was agreeing to settle all of his rights to hearing loss benefits for a total lump sum payment of $34,000, minus attorney's fees, and neither he nor his Counsel suggested that the payment was based on a formula. R.R. at 73a-77a. Claimant also acknowledged the WCJ's warning at the hearing that even if Claimant believed at some point in the future that he settled for too little money, he

12

could not then come back and ask for more, and indicated that he still wished to settle his case. R.R. at 77a. As such, the certified record and the C & R Agreement are devoid of any proof of a mutual mistake. Even Claimant's argument to this Court lacks factual evidence of a mutual mistake. In his brief, Claimant merely contends that Employer was in "total agreement" with the specialist's hearing loss percentages. Claimant's Br. at 7. Claimant has not asserted that Employer agreed that the settlement amount was to be based solely on the specialist's findings. Therefore, Claimant did not meet his burden of proving Employer was also mistaken as to a present, material fact that existed at the time the C & R Agreement was executed. *Farner*, 869 A.2d at 1078-79. Thus, the Board did not err in concluding that Claimant failed to establish a mutual mistake occurred in calculating his lump sum payment of $34,000.

Further, regarding Claimant's claim of unilateral mistake, we note that, before the Board, Claimant did not claim a unilateral mistake was made. Rather, in his appeal to the Board, he claimed only that "the parties simply and mutually made computational errors by which the amount set forth in the [C & R Agreement] did not capture the intent of the parties." R.R. at 29a. Hence, the Board's opinion addresses only whether a mutual mistake was made. Because Claimant now raises his claim of unilateral mistake for the first time in his appeal to this Court, the claim is waived.[12] *See* Pennsylvania Rule of Appellate Procedure 1551(a), Pa.R.A.P. 1551(a) (limiting appellate review to matters raised before government unit); *see also Budd Baer, Inc. v. Workers' Comp. Appeal Bd. (Butcher)*, 892 A.2d 64, 67 (Pa.

[12] We note that, to establish a unilateral mistake, Claimant needed to prove that Employer knew or had reason to know that Claimant believed a formula would be used to calculate his lump sum payment. As explained above, Claimant made no showing that Employer was aware of Claimant's belief in that regard. As such, even if this claim was properly before us, we would find it to be meritless.

13

Cmwlth. 2006) (issues not raised before the Board are deemed waived on appeal to this Court).

For the above reasons, we affirm the Board's order.


_____
CHRISTINE FIZZANO CANNON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Hymms,                             :
           Petitioner          :
                             :
          v.                          :
                             :
Commonwealth of Pennsylvania             :
(Workers' Compensation Appeal           :
Board),                                  :    No. 909 C.D. 2021
           Respondent         :

## O R D E R

AND NOW, this 11th day of August, 2022, the order of the Workers'
Compensation Appeal Board, dated July 15, 2021, is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge