**GROWTH HORIZONS, INC., insured through Dodson Insurance Group, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HALL), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 4, 2000.

Decided Jan. 18, 2001.

Reconsideration Denied March 20, 2001.

Andrew E. Greenberg, Philadelphia, for petitioner.

Erik K. Vogel, Philadelphia, for respondent.

Before SMITH, J., KELLEY, J., RODGERS, Senior Judge.

SMITH, Judge.

Growth Horizons, Inc., insured through Dodson Insurance Group (Employer), petitions for review of an order of the Workers' Compensation Appeal Board (Board) that reversed the decision of a Workers' Compensation Judge (WCJ) and directed that Employer be paid only a portion of its subrogation lien against the recovery that the claimant Jennifer Hall secured from a third-party tortfeasor. Employer contends that the Board acted beyond the scope of its appellate role by ignoring the findings of the WCJ and performing its own factfinding and that substantial, competent evidence supports the WCJ's findings that Employer did not waive or compromise its subrogation lien.

Hall was injured in an automobile accident while in the course of her employment. Employer issued a notice of compensation payable under which Hall was paid $458.30 per week. Hall filed an action against several third-party defendants; she was represented in that action and in the workers' compensation matter by the law firm of Wapner, Newman & Wigrizer (Wapner, Newman), originally by Attorney William Goodman. Wapner, Newman agreed with Frank Cech, the claims administrator for Employer's insurer, to represent Employer's interests in the third-party litigation and to protect Employer's subrogation lien.[1]

Hall petitioned for a commutation of her benefits. The parties filed a joint stipulation, and the Board granted the commutation petition in the amount of $35,745, with an approved 20 percent attorney's fee for Wapner, Newman. A few weeks later Cech sent a letter to Wapner, Newman incorrectly stating that the total amount of Employer's subrogation lien was $45,126.21, although the actual total, including the commutation amount, was $80,871.21. Cech sent a letter to Attorney T. Jonathan Hankin of Wapner, Newman dated August 1, 1997 referring to an agreement with Attorney Goodman, who had since left the firm, to represent the insurer's interests for the lien and stating that the lien was $45,126.21. Ex. C–1.

Hall participated in arbitration of her third-party claim, and in her statement of claim she alleged medical expenses and wage loss damages in excess of $350,000. Hall disclosed the right of subrogation but not the amount of the subrogation lien. The arbitrator awarded Hall civil damages of $120,000. Then Wapner, Newman, after deducting attorney's fees from the figure that had been supplied by Cech, offered to pay Employer $26,624.46 in full satisfaction of its subrogation lien. Cech notified Wapner, Newman that the lien

---

1. Pursuant to Section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, where the compensable injury is caused by a third party, "the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of compensation payable under this article by the employer." Workers' compensation benefits or medical expenses paid before the third-party recovery constitute a lien against such recovery. *P & R Welding & Fabricating v. Workmen's Compensation Appeal Board (Pergola)*, 549 Pa. 490, 701 A.2d 560 (1997).

amount previously stated was incorrect, and he requested payment of the full amount of $80,873.61. Wapner, Newman refused to tender this amount, and Employer filed a modification petition seeking satisfaction of its subrogation lien.

Following a hearing at which Cech testified, the WCJ found that Employer never entered into an agreement with Hall to accept a lower amount in satisfaction of its subrogation lien. The only "agreement" referenced was one between Employer and Wapner, Newman, as evidenced by the contingent fee agreement. The WCJ concluded that even if the agreement between Employer and Wapner, Newman were construed as an agreement between Hall and Employer, it would not be valid because a third-party settlement agreement was never executed or filed with the Bureau of Workers' Compensation, and the agreement compromising a party's rights was not approved by a WCJ, as required by Section 449 of the Workers' Compensation Act (Act), Act of June 2, 1915 P.L. 736, *as amended,* added by Section 22 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 1000.5. The WCJ concluded that no agreement compromising either party's rights could be valid where the same law firm represented them both.

On Hall's appeal the Board reversed. The Board noted that, although Cech received a memorandum from the insurer dated October 24, 1997 indicating a lien amount different from that provided to Attorney Hankin, Cech sent Hankin a letter on December 4, 1997 that contained no reference to the mistake in the amount. Citing *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls),* 714

A.2d 496 (Pa.Cmwlth.1998), the Board noted that this Court had rejected the argument that there could be no agreement where the claimant's attorney also acted as the employer's attorney, when the employer had its own representative to monitor the third-party action. It noted that Employer had Cech to monitor the third-party action. The Board stated that because Hall had received her third-party settlement based, at least in part, on the figures supplied by Employer, Hall could not be forced to pay Employer more than the agreed-upon amount of the lien.[2]

Employer argues that the Board acted beyond its appellate role by failing to address a single finding of fact of the WCJ and instead performing its own factfinding. Employer notes that it has always maintained that it had a valid contract with Wapner, Newman; however it states that the Board implicitly relied upon a ruling that has no basis whatsoever in the record, namely, that Employer agreed to compromise its lien. Employer contends that the Board also in essence made its own improper and unsupported finding that the third-party arbitration award was reduced because of the lien figure supplied by Employer. Next Employer argues that the Supreme Court has held that the right to subrogation is absolute and may not be challenged, even where the employer was partially responsible for the employee's injury. *Winfree v. Philadelphia Electric Co.,* 520 Pa. 392, 554 A.2d 485 (1989).

There was no dispute that the amount actually paid by Employer as of the date of the third-party recovery was $80,873.61 and that Employer's claims administrator

---

**2.** The Court's review of the Board's order is limited to determining whether the necessary findings of fact are supported by substantial evidence in the record and whether there was an error of law or a constitutional violation. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988). It is solely for the WCJ as factfinder to assess credibility and to resolve conflicts in the evidence and to determine the weight to be given

to evidence, and the WCJ may reject the testimony of any witness in whole or in part, even if it is uncontradicted. *Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta),* 749 A.2d 1021 (Pa.Cmwlth.2000). The Court must view the evidence in the light most favorable to the party who prevailed before the factfinder and give that party the benefit of the most favorable inferences and may not consider matters outside the record. *Id.*

later sent correspondence with an obvious clerical mistake, failing to include the commutation amount of $35,750 that Hall received in December 1995. Despite Hall's assertions that the correct amount of the lien would have influenced the arbitration, Employer proved and the WCJ found that the amount of the lien was not presented to the arbitrator. Employer notes that the Board referred to Employer's agreement with Wapner, Newman and then cited *SKF USA, Inc.* and *Dasconio v. Workmen's Compensation Appeal Board (Aeronca, Inc.)*, 126 Pa.Cmwlth. 206, 559 A.2d 92 (1989), as cases in which this Court "upheld these agreements," explaining that in each case the Court held that an agreement under which an employer released or waived its subrogation right was valid under the Act. However, in both cases there were written agreements under which the employers expressly agreed to compromise their subrogation rights, unlike the present case.

Hall argues that Cech was acting as the agent of Employer, and his representation should therefore be binding on the principal. Further, she asserts that an "agreement" as to the amount of the lien existed as memorialized in the correspondence from Cech to Attorney Hankin, in particular the letter from Cech of August 1, 1997. She cites *Fidler v. Workmen's Compensation Appeal Board (United Cable Corp.)*, 83 Pa.Cmwlth. 155, 478 A.2d 907 (1984), as a case in which the Court held that ·evidence in an exchange of letters showed that an insurer agreed to compromise its existing subrogation lien. Hall asserts that there is "similar evidence" in this case. However, Hall ignores that *Fidler* also involved an express agreement to compromise a subrogation lien.

Hall further argues that the WCJ erred in applying Section 449 of the Act. She cites *SKF USA, Inc.* and *Dasconio* for the proposition that provisions requiring filing of agreements on forms are intended to prevent imposition upon claimants and should not be used to deprive a claimant of

the benefit of a bargain. However, *Dasconio* was decided long before Section 449 was enacted, and *SKF USA, Inc.* does not apply or discuss that section. Hall also maintains that the situation here is similar to the employer's effort in the latter case to deny the agreement in part because the attorney for the claimant also "represented" the employer's subrogation interests in the third-party action but allegedly misrepresented applicable law. The Court noted that the employer retained its own counsel to monitor the claimant's third-party action and that there was no attorney-client relationship with the claimant's counsel. Employer did not retain separate counsel in this case.

Hall also contends that the issue of unilateral mistake recently was addressed by the Superior Court in a similar context in *Kramer v. Schaeffer*, 751 A.2d 241 (Pa.Super.2000). In *Kramer* an adjuster who was newly assigned a file offered to settle a case shortly after a trial in which the plaintiffs won on liability but were awarded zero damages; the insurer then declined to honor the agreement on the ground that the offer was made by mistake. The Superior Court noted that generally, if a mistake is unilateral but the other party knows or has good reason to know of the mistake, relief will be granted to the same extent as a mutual mistake. In *Kramer*, however, the court found insufficient proof in the written evidence presented to establish that the second offer was indeed a mistake.

In the present case, the opposite is true. The WCJ found that in July 1995 Cech transmitted to Wapner, Newman a printout of disability and medical benefits already paid. A later printout showed that wage loss benefits alone paid through June 1995 were almost $28,000. Ex. D 1. Wapner, Newman also knew, as Hall's counsel, that Employer had paid $35,745 for commutation. Accordingly, Wapner, Newman knew or had very good reason to know that a statement from Cech in August 1997 that the total lien was roughly $45,000 was

a mistake. The Court agrees that the findings of the WCJ were supported and that he correctly concluded that the circumstances were not such as to defeat Employer's Section 319 right of subrogation. Therefore, the Board's order must be reversed.

### ORDER

AND NOW, this 18th day of January, 2001, the order of the Workers' Compensation Appeal Board is reversed, and the order of the Workers' Compensation Judge is reinstated.

RODGERS, Senior Judge, dissents.