**William CHRISTOPHER, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CONSOLIDATION COAL COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 19, 2001.

Decided March 8, 2002.

---

Gary D. Monaghan, Uniontown, for petitioner.

George Stipanovich, Pittsburgh, for respondent.

Before SMITH–RIBNER, Judge, KELLEY, Senior Judge,[1] and JIULIANTE, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

William Christopher (Petitioner) appeals from the order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) denying his petition for a commutation of Petitioner's partial disability benefits because Petitioner failed to meet his burden to prove that a commutation would be in his best interest. The sole issue raised by Petitioner is whether the WCJ capriciously disregarded competent evidence of record in denying his commutation petition when he was the only party to present evidence before the WCJ that a commutation of the partial disability benefits would be in Petitioner's best interest.

1. This case was assigned to the opinion writer prior to the date when Judge Kelley assumed the status of senior judge on January 1, 2002.

## I

Petitioner suffered a compensable back injury on July 6, 1996 and received total disability payments in the amount of $527 per week. In August 1998 Petitioner underwent an impairment rating evaluation, which was performed at the request of his employer Consolidation Coal Company (Respondent). Dr. William J. Mitchell, an orthopedic surgeon, performed the evaluation, and he reported a five percent impairment of Petitioner's whole body pursuant to the American Medical Association's guide to the evaluation of permanent impairment. The physician diagnosed Petitioner's condition as a lumbar sprain, mild lumbar spondylosis with central disc herniation at L5–S1 and mild retrolisthesis at L5–S1. Because Petitioner's impairment rating was less than 50 percent, Respondent adjusted Petitioner's benefits from total to partial disability at the continuing rate of $527 per week, for a maximum of 500 weeks. In November 1998 Petitioner filed his petition to commute the balance of his partial disability benefits to a lump sum payment of approximately $250,000. He asserted that a commutation was in his best interest, that it would not result in undue expense or hardship to either party and that proof of indemnity would be provided to protect Respondent.

The WCJ held a hearing on Petitioner's commutation petition in May 1999. At the hearing, Petitioner testified that he would prefer to commute his benefits because he was unable to meet his monthly expenses of $2,239 out of his $2,108 monthly workers' compensation benefits, and he was concerned about his financial future after the payments ended. Petitioner also testified that he could use the lump sum to pay off his current financial indebtedness and to invest for the future. When questioned as to what he planned to do with the lump sum if commuted, Petitioner speculated that he might buy another vehicle so that his wife could get back and forth to work and invest in a piece of property on which to place a trailer and in a small business which he could operate. Petitioner stated that he planned to buy the house he resided in from his father-in-law, to help put his son through college and help his daughter get a start in life and to invest about $150,000 in mutual funds to generate income. In addition, a ten percent attorney fee would be deducted from the commuted sum, which would leave him approximately $30,000 to pay off debts.

At the hearing, Petitioner presented testimony from his wife, Janet Christopher, from Stephen Peters, an investment banker, and from Russell Fike, an independent insurance agent. Christopher testified that she was employed and would continue to work and that she and Petitioner wanted to assist their son with colleges expenses, pay off existing debts and invest as much of the commuted funds as possible. Using examples with a base investment of $150,000, Peters projected hypothetical rates of return with three investment management companies. Peters opined that if Petitioner and his wife lived on a reduced income for the first ten years, the investment would provide sufficient income in later years when Petitioner's disability benefits had lapsed.[2] On cross-examination, Peters testified that Petitioner would have full control of the assets and would be responsible for paying the taxes on any dividends and redemptions with respect to

---

**2.** In calculating his figures for each hypothetical, Peters used a $150,000 initial investment with payments of $750 per month for years 1 through 5; $1125 per month for years 6 through 10; $1680 per month for years 11 through 15; $2,523 per month for years 16 through 20; and $3,784 per month for years 21 through 25. In years 1 through 5, Petitioner's yearly income would decrease from $27,404 to $9,000 based on these figures.

mutual fund investments, which are not insured by the Federal Deposit Insurance Corporation. Moreover, there were no guarantees with mutual funds, and Petitioner has not actually decided in which fund he would invest. Fisk provided insurance options that Petitioner could purchase to protect Respondent's security interests with respect to any overpayments. Respondent offered no evidence.

The WCJ denied Petitioner's petition, finding that Petitioner did not meet his burden of proving that a commutation would be in his best interest. In reaching his decision, the WCJ found that Petitioner wanted to do so many things with the commuted funds that there would be very little money, if any, for Petitioner to invest, leaving him and his wife without any steady source of income. The WCJ concluded that even if Petitioner could reduce his monthly living expenses and invest $150,000, there were no guarantees with respect to the profitability of the investments. The WCJ questioned whether Petitioner could survive on a reduced income of $750 per month from the proposed $150,000 investment when he was unable to meet his monthly expenses from the $2,108 that he received each month in benefits. The Board affirmed, relying on *Linko v. Workmen's Compensation Appeal Board (Roadway Express, Inc.)*, 153 Pa. Cmwlth.552, 621 A.2d 1188 (1993). It concluded that the WCJ provided an adequate explanation for determining that commutation would not be in Petitioner's best interest.

## II

■ Section 316 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 604, provides that compensation may be commuted by the Board if it appears that commutation will be in the best interest of an employee or the dependents of a deceased employee and will not result in any undue hardship or expense to either party and if the employee furnishes proper indemnity to safeguard the employer's rights. Whether a commutation of benefits is in an employee's best interest is a question of law. *Wentz v. Workmen's Compensation Appeal Board (Consolidated Freightways, Inc.)*, 654 A.2d 90 (Pa. Cmwlth.1995). Commutation petitions are rarely granted inasmuch as regular income installments to the injured worker over a long period are the preferred practice. *Huskins v. Workmen's Compensation Appeal Board (University of Pennsylvania)*, 80 Pa.Cmwlth.161, 471 A.2d 114 (1984)

■ Where the party with the burden of proof is the only party to present evidence and does not prevail, this Court's review is limited to determining whether the WCJ committed an error of law or capriciously disregarded competent evidence. *Linko;* *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Cmwlth.436, 550 A.2d 1364 (1988). A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence. *Volkswagen of America v. Workmen's Compensation Appeal Board (Russell)*, 143 Pa. Cmwlth.69, 598 A.2d 602 (1991). Petitioner argues that the WCJ capriciously disregarded evidence that a commutation would be in his best interest because it would enable him to pay off existing debts and would provide him with a source of income after his benefits lapse at age 55, when he would have no legitimate expectation of employment. Petitioner contends that he presented sufficient, competent and credible evidence to demonstrate that a commutation would be in his best interest and would not cause any undue expense or hardship to either party. He additionally

argues that the Court's decisions in *Linko* as well as in *Huskins* are distinguishable from his situation and that they do not support the Board's decision.

In *Linko* the Court upheld the Board's denial of a commutation of benefits because the claimant did not present any specific testimony as to his intended use of the commuted funds, nor did the claimant adequately protect his employer against the possibility of overpayments because he provided no guarantee against the cancellation of a proposed life insurance policy naming the employer as beneficiary. Also the monthly policy premium would offset any increase in income to the claimant if his benefits were commuted and then invested. The Court in *Huskins* found that a first mortgage given to the employer on a home that the claimant planned to build with the commuted funds on a lot that he owned was insufficient to safeguard the employer's rights in the event of an overpayment, and it agreed that a commutation of benefits should be denied.

Asserting that he presented sufficient security to protect Respondent in the event of an overpayment, Petitioner notes that he proposed a paid-up life insurance policy indemnifying Respondent as loss payee along with an irrevocable assignment from Petitioner and his wife of specified future wages as additional protection for Respondent during the partial disability period. Respondent, on the other hand, argues that Petitioner offered no specific evidence as to what debts he would pay off or the amounts of those debts; he provided no specific testimony as to other expenditures to be made from the commuted funds; and he presented no specific investments to be made if the benefits were commuted. Similarly, Petitioner offered no specifics concerning the purchase price or valuation for the property that he wished to purchase. With regard to in-

demnification, Petitioner provided no evidence of a completed application for insurance that was submitted to an insurance agent naming Consolidation Coal as the primary beneficiary. Respondent also raised the possibility that Petitioner could change the beneficiary after he secured such a policy. Moreover, the wage assignment provided no guarantees to Respondent because it had no mechanism for independently enforcing the assignment.

The WCJ is the fact finder when a commutation petition is first heard by the WCJ, and his findings of fact are binding on the Board if supported in the record. *Wentz*; *Linko*. The WCJ here found that even though Petitioner planned to invest a portion of the commuted funds, there were so many things that he wanted to do with the funds that there would be very little left to invest. Although Petitioner testified that he would pay off debts to reduce his monthly expenses, the WCJ was not persuaded that Petitioner would not soon dissipate the commuted funds to satisfy his many intentions. Of even greater concern to the WCJ was the fact that if the commuted funds were invested, Petitioner's monthly income from the proposed investments would be reduced to almost one-third of his current monthly income from workers' compensation benefits, prompting Petitioner and his wife to make withdrawals from the investment to meet their needs. A lack of guarantees with regard to the investments was a significant consideration as well.

A review of the record and the findings of fact made by the WCJ establishes that the WCJ did not capriciously or deliberately disregard apparently trustworthy evidence to determine that a commutation would not be in Petitioner's best interest. *Volkswagen of America*. Because commutations are rarely granted, *Huskins*, the Court agrees that Petitioner has not dem-

onstrated that the WCJ erred. Furthermore, in accordance with the Court's holdings in *Linko* and *Huskins*, Petitioner failed to present the specificity required to meet his burden of proof or to provide sufficient evidence of indemnity to protect Respondent in the event of an overpayment of benefits. The Court therefore affirms the order of the Board.

### *ORDER*

AND NOW, this 8th day of March, 2002, the order of the Workers' Compensation Appeal Board is hereby affirmed.