IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janelle Newsome,                          :
                                          :
                        Petitioner        :
                                          :
            v.                            : No. 50 C.D. 2023
                                          : Argued:  April 9, 2024
City of Philadelphia                      :
(Workers' Compensation                    :
Appeal Board),                            :
                                          :
                        Respondent        :


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MARY HANNAH LEAVITT, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  July 15, 2024


        Janelle Newsome (Claimant) petitions for review of the decision of the
Workers' Compensation (WC) Appeal Board (Board) that affirmed the decision of
a Workers' Compensation Judge (WCJ) granting the modification petition and
review petition (modification/review petition) filed by the City of Philadelphia
(Employer).  The Board's order directed Claimant to reimburse Employer in the
amount of $45,530.48 to satisfy Employer's subrogation lien against Claimant,
which arose as a consequence of Claimant's settlement of a third-party lawsuit.
Claimant presents two issues for our review:  whether the Board erred in affirming
the WCJ's decision to grant Employer's modification/review petition when the WCJ

capriciously disregarded critical and undisputed facts about the amount of the subrogation lien; and whether the Board erred in affirming the WCJ's decision to grant Employer's modification/review petition when the WCJ failed to apply equitable principles and find that there was an enforceable agreement between Employer and Claimant for the subrogation lien in the amount of $14,210.69. After careful review, we affirm.

The relevant background from the record and as summarized by the WCJ is as follows.[1] Claimant was injured in 2016 while she was employed as a police officer with Employer when a construction sign hit Claimant on the head. Employer issued an amended notice of compensation payable on October 20, 2017, accepting Claimant's head injury and concussion as compensable work injuries. Reproduced Record (R.R.) at 4a-5a; 137a. Employer paid indemnity and medical benefits to Claimant for two periods of disability, from November 21, 2016, through April 3, 2018, and from December 12, 2018, through March 12, 2019, after which Claimant returned to light-duty work. *Id.* at 138a. Claimant filed a third-party lawsuit against the contractors responsible for the construction site where the sign that struck Claimant was stored, which resulted in a settlement in May 2020, in the amount of $675,000. *Id.* at 138a-39a.

Claimant was represented by Attorney Brian Hartshorn for her third-party lawsuit, who is not the same attorney representing Claimant for her WC claims. While preparing for settlement discussions in the third-party lawsuit, Attorney Hartshorn sought and received an estimate of the amount of Employer's subrogation lien from Employer's third-party administrator. Andrew Lankford, a claims adjuster (Claims Adjuster), informed Attorney Hartshorn that the amount of Employer's

---

[1] The WCJ's Opinion, June 30, 2022, may be found in the Reproduced Record (R.R.) at 135a-42a.

subrogation lien was $14,210.69. R.R. at 75a-78a; 137a. After Claimant settled her third-party lawsuit, Robert Frank, a claims supervisor (Claims Supervisor), reviewed the figures provided by the Claims Adjuster, found that they were incorrect, and determined that the correct amount of the net subrogation lien was $48,530.48. *Id.* at 138a. On February 25, 2021, Employer filed a modification/review petition asserting its lien against Claimant's third-party award. *Id.* at 6a-8a; 137a. In 2021, the Claims Supervisor prepared and filed a third-party settlement agreement form, indicating the amount of the net subrogation lien was $45,535.73. *Id.* at 123a-24a.

The WCJ held a total of four hearings on Employer's modification/review petition. Employer presented deposition testimony and documentary evidence from its Claims Supervisor. Claimant presented deposition testimony and documentary evidence from her third-party counsel, Attorney Hartshorn. The WCJ summarized the testimony from the Claims Supervisor as follows. Claims Supervisor supervised Claims Adjuster who prepared the initial lien calculation, but he did not review the calculation before the Claims Adjuster provided it to Attorney Hartshorn. Claims Supervisor explained that Claims Adjuster was a senior account representative who was expected to know how to calculate a lien. Claims Adjuster is no longer employed by the third-party administrator. R.R. at 137a. Claims Supervisor testified that Claims Adjuster made a mistake in calculating the lien. Claims Supervisor explained that the "lien figures [Claims Adjuster] prepared were incorrect because he failed to include wage loss benefits that were paid to Claimant for the entire time that she was out of work." *Id.* Claims Supervisor confirmed the two periods of Claimant's disability and the weekly compensation rate and determined that the wages paid to Claimant for the two periods totaled $76,163.64. *Id.* at 138a. Claims Supervisor also corrected the

3

amount of medical benefits paid to Claimant, reducing it by $5,587.00, which was the cost of an independent medical examination. *Id.* After he corrected the lien calculation, Claims Supervisor informed Claims Adjuster of the corrections and rationale, and he instructed Claims Adjuster to inform Attorney Hartshorn of the correct figure, which would have occurred after the settlement of the third-party lawsuit. R.R. at 138a. Claims Supervisor did not recall if he, personally, spoke with Attorney Hartshorn. *Id.* Claims Supervisor prepared a third-party settlement agreement form with the corrected figures. *Id.* at 123a-24a; 138a.

The WCJ summarized Attorney Hartshorn's deposition testimony as follows. Attorney Hartshorn was licensed as an attorney in 2004, and he began working with his current law firm in 2015. During his career, he has settled personal injury cases that involved a corresponding WC claim. R.R. at 138a-39a. Attorney Hartshorn filed a third-party lawsuit relating to Claimant's 2016 work injury. After a settlement conference and then a mediation in May 2020, the third-party lawsuit settled. Attorney Hartshorn communicated with Claims Adjuster by email between April 22, 2020, and May 5, 2020, in which they discussed the lien amount as $14,210.69. *Id.* at 72a-78a; 139a. Attorney Hartshorn prepared a settlement conference memorandum which he also utilized for the mediation. *Id.* at 139a. *See also* Supplemental Reproduced Record (S.R.R.) at 175b-261b. In preparation for the mediation, Attorney Hartshorn valued the case for settlement, considering liability factors, non-economic damages, and economic damages. Included in the economic damages were Claimant's wage loss, future wage loss, medical costs, and the WC lien. Attorney Hartshorn understood that the WC lien was an element of damages, which would come out of Claimant's settlement portion. R.R. at 139a. Attorney Hartshorn did not have the ability to calculate the lien total on his own, and

4

he utilized the figure and documents provided by Claims Adjuster. Attorney Hartshorn utilized a figure of $14,098.77[2] as the lien amount at the time of settlement. *Id. See also* S.R.R. at 180b.

After the third-party lawsuit settled, Attorney Hartshorn had additional communication with Claims Adjuster concerning the lien, and the possibility of reducing the lien based upon settlement costs. In December 2020, Claims Adjuster informed Attorney Hartshorn that the lien total had increased to $48,530.48. R.R. at 79a-82a; 139a. Attorney Hartshorn informed Claims Adjuster that he relied on the figure provided by Claims Adjuster, and that Claimant should not be responsible for any additional money owed. *Id.* at 83a-84a; 139a. Attorney Hartshorn confirmed that his law firm was holding $14,098.77 in escrow to cover the subrogation lien. *Id.* at 139a.

Attorney Hartshorn testified to events surrounding the settlement of Claimant's third-party lawsuit. During Claimant's deposition for her third-party lawsuit, Attorney Hartshorn stated on the record that Claimant was receiving wages in lieu of WC benefits as a result of her work injury. R.R. at 139a; S.R.R. at 23b-24b. A copy of Claimant's Heart and Lung[3] claim form was submitted as a deposition exhibit. S.R.R. at 159b-60b. Attorney Hartshorn never questioned

---

[2] The record does not explain why Attorney Hartshorn used a different figure ($14,098.77) than provided by the Claims Adjuster ($14,210.69).

[3] The act commonly known as the "Heart and Lung Act," Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638, entitles certain employees, like Claimant here, who serve the public in essential, high-risk professions, who are injured performing their work duties, and are temporarily unable to perform those duties, to the payment of their full salaries. In these circumstances, both WC and Heart and Lung benefits are paid concurrently, but any WC payments the employee receives are required to be turned over to the public employer. Section 1(a) of the Heart and Lung Act, 53 P.S. §637(a); *Commonwealth v. Workers' Compensation Appeal Board (Piree)*, 182 A.3d 1082, 1087 (Pa. Cmwlth. 2018).

Claims Adjuster regarding the lien figures provided in April and June 2020, even though, at that time, Attorney Hartshorn was provided with a figure of $1,728.29 attributed to wage loss in the calculation of the lien. R.R. at 140a. Attorney Hartshorn assumed the figures given by Claims Adjuster were correct even though they did not match Claimant's third-party deposition testimony. Attorney Hartshorn prepared a settlement memorandum that was provided to the mediator to settle Claimant's third-party lawsuit. *Id.* at 140a; S.R.R. at 175b-261b. In the settlement memorandum, Attorney Hartshorn utilized both the lien figure of $14,098.77 and the wage loss figure of $63,021.00 covering the period from November 20, 2016, through the end of 2019. The wage loss figure was based on the report of a vocational expert whom Attorney Hartshorn engaged for the third-party lawsuit. Claimant told the vocational expert she had been receiving her base salary for the periods she was out of work. R.R. at 140a; S.R.R. at 234b-250b.

Attorney Hartshorn also testified that in December 2020, Claims Adjuster informed him that the initial lien figure was incorrect, and that the mistake was because Claims Adjuster had not included Claimant's wage loss figure for the first period of disability. The ledger that Claims Adjuster provided to Attorney Hartshorn at that time included only one check for indemnity for the period between March 20, 2017, through September 24, 2017. R.R. at 78a; 140a.

As to the testimony of Claims Supervisor, the WCJ "carefully reviewed the deposition of [Claims Supervisor] and finds the same to be credible and persuasive regarding the calculation and amount of Employer's subrogation lien. [Claims Supervisor] relied upon the raw data in calculating the same, including the period during which Claimant was paid under [the] Heart and Lung [Act]." R.R. at 140a.

6

As to Attorney Hartshorn's testimony, the WCJ found as follows:

> [The WCJ] has carefully reviewed the deposition of [Attorney] Hartshorn and does not find the same persuasive, as [Attorney] Hartshorn should have known that the lien was greater than the $14,098.77 figure provided by the [Claims Adjuster]. [Attorney] Hartshorn acknowledged on the record at the August 2018 deposition of Claimant that he believed his client was receiving wages in lieu of compensation that were paid by the [WC] carrier, he knew that the figure provided by [Claims Adjuster] did not match his client's testimony, the report of Claimant's vocational expert in the third-party case supported that the lien amount was incorrect, and [Attorney] Hartshorn utilized the past lost earnings figure in his [settlement and] mediation memorandum. Based on these factors, this Judge concludes that [Attorney] Hartshorn should have known that the lien figure provided by [Claims Adjuster] was inaccurate.

R.R. at 140a.

The WCJ further found that Employer has a net subrogation lien of $45,535.73. R.R. at 140a. The WCJ directed Claimant to release from escrow by Attorney Hartshorn the amount of $14,098.77, and to further pay Employer $31,431.71, for a total of $45,530.48 as satisfaction of the net subrogation lien. *Id.* at 141a. The WCJ further found that in the event of future wage loss, Employer would only be responsible for 45.10% of Claimant's future indemnity benefits until the subrogation interest of $586,592.95 is exhausted. *Id.* The WCJ concluded that Employer met its burden and granted the modification/review petition.

Claimant appealed to the Board, which affirmed, in an opinion and order dated December 30, 2022.[4] The Board summarized the testimony and evidence provided by Claims Supervisor and Attorney Hartshorn. R.R. at 149a-

---

[4] The Board Opinion, December 30, 2022, may be found in the Reproduced Record at 147a-54a.

152a. The Board noted that Claims Adjuster made no mention of fraud or duress to Claims Supervisor when he provided the lien information to Attorney Hartshorn. *Id.* at 151a. Before the Board, Claimant argued that the WCJ erred when she capriciously disregarded the testimony of Attorney Hartshorn, who testified that he relied on the lien amount provided by Claims Adjuster in settling Claimant's third-party lawsuit. Claimant argued that because it was not Attorney Hartshorn's fault that the initial amount quoted was incorrect, but rather Employer's fault, the WCJ erred in not applying equitable principles to excuse Claimant from paying the full amount of the subrogation lien. *Id.* at 150a. The Board reviewed the WCJ's credibility determinations and confirmed that the WCJ has complete authority over questions of credibility. *Id.* at 152a. The Board concluded that Employer met its burden to modify the net subrogation lien amount to $45,535.73, based on the credited testimony of Claims Supervisor and the credited third-party settlement agreement form. *Id.* at 152a-53a. The Board concluded "[t]hat [Claims Adjuster] was mistaken in his initial quote of the subrogation lien does not change the result." *Id.* at 153a. The Board concluded that an employer is entitled to subrogation to the full extent of the lien, unless the employer has "indicated a willingness to compromise its lien, despite the fact that [Claims Adjuster] had understated the amount of the lien," citing in support *Growth Horizons, Inc. v. Workers' Compensation Appeal Board (Hall)*, 767 A.2d 619 (Pa. Cmwlth. 2001). R.R. at 153a.

The Board also reasoned that a release is binding on the parties unless executed under fraud, duress, or mutual mistake, citing *Lanci v. Metropolitan Insurance Co.*, 564 A.2d 972, 974 (Pa. Super. 1989). R.R. at 153a. The Board provided the general rule that a unilateral mistake which is not caused by the fault

8

of the opposing party affords no basis for relief, citing in support *Su Hoang v. Workers' Compensation Appeal Board (Howmet Aluminum Casting, Inc.)*, 51 A.3d 905, 910 (Pa. Cmwlth. 2012). R.R. at 153a. The Board concluded that, "[h]ere, the record is void of evidence that the third-party settlement was executed under fraud, duress, or mutual mistake such that this amount should be disregarded." *Id.* at 153a. Furthermore, the WCJ "did not find [Attorney] Hartshorn's testimony persuasive but instead found that he should have known that the initial quote was incorrect." *Id.* The Board rejected Claimant's argument that the WCJ capriciously disregarded Attorney Hartshorn's testimony, concluding that "[a]n express consideration and rejection of evidence is not capricious disregard," citing in support *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137 (Pa. Cmwlth. 2004). R.R. at 153a. The Board concluded that, here, Claims Adjuster's unilateral mistake was "insufficient to defeat [Employer's] right to subrogation for the actual amount of the lien." *Id.* Claimant then appealed to this Court.[5]

---

[5] Our review in a WC appeal is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. *Bloom v. Workmen's Compensation Appeal Board (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 n.4 (Pa. Cmwlth. 1996). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992). When properly raised, as it was here, this Court may review for "capricious disregard of material, competent evidence." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 490 (Pa. 2002). Capricious disregard occurs "only when the fact[]finder deliberately ignores relevant, competent evidence." *Williams*, 862 A.2d at 144. Whether a binding agreement existed between Employer and Claimant as to the amount of the subrogation lien is a question of law, not of fact, over which our review is plenary. *Konyk v. Pennsylvania State Police of the Commonwealth of Pennsylvania*, 183 A.3d 981, 988 n.6 (Pa. 2018).

The first question presented is whether the WCJ capriciously disregarded the testimony of Attorney Hartshorn about the amount of the subrogation lien. Claimant argues that the WCJ capriciously disregarded undisputed facts that showed Claims Adjuster provided an incorrect amount for Employer's subrogation lien and that Attorney Hartshorn relied upon the incorrect figure when settling Claimant's third-party lawsuit. Claimant argues that the WCJ erred in determining that Attorney Hartshorn should have known the lien figure was greater than the $14,210.69 figure provided by Claims Adjuster, based on Attorney Hartshorn's statement at Claimant's deposition in the third-party lawsuit in 2018, that he believed Claimant had been receiving wages in lieu of compensation paid by the WC carrier. Employer responds that the WCJ has full authority over credibility determinations, and that the WCJ did not capriciously disregard Attorney Hartshorn's testimony, when she specifically considered it and rejected it as unpersuasive.

In analyzing this question, we are mindful that in WC cases, "the WCJ is the ultimate fact[]finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of medical witnesses." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). As this Court further stated, "[w]hile this Court can and should consider the competency and sufficiency of evidence presented before a WCJ, the WCJ's assessment of witness credibility is not subject to our review on appeal." *Id.* Finally, we must review the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the

10

evidence. *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021).

In *Williams*, 862 A.2d 137, our Court considered whether the Board erred in granting the employer's petition to modify the claimant's WC benefits because the claimant failed to pursue an available position within his medical restrictions. The claimant argued that the WCJ capriciously disregarded the testimony of the claimant's medical experts, who opined that the claimant was unable to perform the duties required by the available position. *Id.* at 140-41. The Court emphasized that

> as factfinder, the WCJ is not required to accept even uncontradicted testimony. *Capasso v. Workers' Compensation Appeal Board (RACS Associates, Inc.)*, 851 A.2d 997 (Pa. Cmwlth. 2004). Capricious disregard occurs only when the fact[]finder deliberately ignores relevant, competent evidence. *Id.* A capricious disregard of the evidence in a workers' compensation case is a deliberate and baseless disregard of apparently trustworthy evidence. *Christopher v. Workers' Compensation Appeal Board (Consolidation Coal Co.)*, 793 A.2d 991 (Pa. Cmwlth. 2002). We emphasize our Supreme Court's pronouncement that, where there is substantial evidence to support an agency's factual findings, and those findings in turn support conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence. *Wintermyer* [812 A.2d at 490].

*Williams*, 862 A.2d at 144. The Court then analyzed and rejected the claimant's argument regarding the WCJ's capricious disregard of the testimony of the claimant's medical expert.

> Counsel for [the c]laimant seems to misapprehend the crucial distinction between a rejection of a witness's testimony, and the capricious disregard thereof. In this

11

matter, the WCJ clearly and detailedly summarized the testimony of [the claimant's medical expert], as evidenced primarily in the WCJ's [finding of fact]. Although the WCJ ultimately found that testimony to not be credible, such a credibility determination is the exclusive province of the WCJ, and such a rejection of testimony is not a disregard therefor, but simply a rejection. A capricious disregard of evidence occurs only when the fact[]finder deliberately ignores relevant, competent evidence. *Capasso*.

*Williams*, 862 A.2d at 145. *See also Grooms v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 42 C.D. 2022, filed January 23, 2023), *appeal denied*, 302 A.3d 1193 (Pa. 2023).[6]

The second question presented is whether the WCJ erred by not applying equitable principles when she determined that no enforceable agreement existed between Claimant and Employer for a subrogation lien in the amount of $14,210.69. Claimant argues that the record as a whole establishes that Employer entered into an implied contract with Claimant as to the amount of the subrogation lien when the Claims Adjuster communicated the $14,210.69 amount to Attorney Hartshorn, and that the implied contract should be enforced. Claimant acknowledges that a mutual mistake may provide a basis for avoiding a contract when both parties are mistaken as to existing facts at the time of the agreement, and that a unilateral mistake provides no such relief to the guilty party, citing in support *Su Hoang*, 51 A.3d at 910. Claimant further acknowledges that, pursuant to *Growth Horizons, Inc.*, 767 A.2d 619, if the other party knows or has good reason to know of the unilateral mistake, relief will be granted to the same extent as a mutual mistake, which would permit the avoidance of the agreement. Claimant does not

_____

[6] *See* Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

12

directly address the WCJ's finding that Attorney Hartshorn should have known that the lien amount provided by Claims Adjuster was incorrect, based on evidence of Attorney Hartshorn's knowledge of Claimant's wage loss payments that were mistakenly omitted from Claims Adjuster's calculations. Claimant urges the Court to determine, as a matter of law, that Employer's unilateral mistake should prevent Employer from shifting the burden to Claimant for the additional amount owed on the subrogation lien. Claimant urges the Court, without discussion of any applicable legal authority, to provide equitable relief to Claimant on the subrogation lien owed, when Claimant's attorney relied in good faith on the amount provided by Claims Adjuster.

Employer responds that there is no dispute that Claims Adjuster made a mistake in his initial calculation of the subrogation lien by failing to account for all of Claimant's wage loss payments, and this mistake was not made deliberately or in bad faith. However, Employer contends that a mistake made by Claims Adjuster, on which Attorney Hartshorn relied for settlement of the third-party lawsuit, is not sufficient to defeat Employer's right to subrogation under Section 319 of the Workers' Compensation Act (Act), 77 P.S. §671,[7] when Attorney Hartshorn should have known the amount provided was incorrect. Employer argues that this issue is governed directly by *Growth Horizons, Inc.*, 767 A.2d at 622.

In *Growth Horizons, Inc.*, 767 A.2d 619, our Court considered whether the Board erred when it directed the claimant to pay the employer only a portion of the subrogation lien owed, when the employer's adjuster initially mistakenly calculated the amount of the lien, on which the claimant relied to settle a third-party claim. The employer's adjuster's calculation was incorrect because it failed to

---

[7] Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1014.4, 2501-2710.

13

include a commutation amount received by the claimant. *Id.* at 621-22. The Court held that the claimant's attorney "knew or had very good reason to know" that the employer's adjuster's lien amount was a mistake, and the initial calculation could not be used to defeat the employer's right to subrogation under Section 319 of the Act. *Id.* at 622-23.

Also relevant is *Thompson v. Workers' Compensation Appeal Board (USF&G Co.)*, 781 A.2d 1146 (Pa. 2001), in which our Supreme Court held that equitable principles do not apply to an employer's right of subrogation under Section 319 of the Act, absent an employer's bad faith. In *Thompson*, a claimant received WC benefits for a work injury he sustained while he was employed by a welding company. Several years later, the claimant filed a third-party suit against the manufacturer and supplier of the equipment that injured him. The claimant was unable to produce the defective bolts he alleged caused his injury because the claimant's employer inadvertently lost them between the time of the injury and the third-party suit. The trial court ruled that the loss of the bolts substantially deprived the equipment manufacturer and supplier of the ability to prepare a defense, granted a motion *in limine*, and prevented the claimant from presenting any evidence of his WC benefits. The claimant settled his third-party suit for $300,000, which the trial court stated was exclusive of all WC benefits received by the claimant. *Id.* at 1148-49. When the employer filed a petition to enforce its subrogation lien, the WCJ granted and the Board affirmed, based on the employer's absolute right to subrogation under Section 319 of the Act. On appeal, a divided panel of our Court reversed the Board, and barred the employer's recovery on equitable grounds. *Id.* at 1149. The Supreme Court reversed and held that the employer's right to subrogation in Section 319 of the Act is clear and unambiguous, written in mandatory terms, and

14

"by its terms, admits of no express exceptions, equitable or otherwise." *Id.* at 1151. The Supreme Court explained that "[t]herefore, as a general principle of law, the employer's subrogation rights are statutorily absolute and can be abrogated only by choice." *Id.* at 1152. The Supreme Court further noted that "nothing in this Opinion shall be construed as suggesting that subrogation would be appropriate in the face of deliberate, bad faith conduct on the part of the employer." *Id.* at 1154. No showing of the employer's bad faith was made, and the Court held that the employer's right to subrogation remained absolute. *Id.*; *see also Richman v. Workers' Compensation Appeal Board (Charming Shoppes, Inc.)* (Pa. Cmwlth., No. 540 C.D. 2012, filed February 15, 2013) (applying *Thompson* and *Growth Horizons, Inc.* and holding that the employer was entitled to the full amount of its subrogation lien, even though the employer's adjuster mistakenly provided an incorrect figure which the claimant relied upon to settle her third-party claim).

As to the first issue, we reject Claimant's argument that the WCJ capriciously disregarded the testimony of Attorney Hartshorn as to the amount of the subrogation lien. The WCJ summarized in detail Attorney Hartshorn's testimony, as well as documentary evidence regarding the settlement of Claimant's third-party lawsuit. R.R. at 138a-140a. The WCJ then stated that she had "carefully reviewed the deposition of [Attorney] Hartshorn and does not find the same persuasive, as [Attorney] Hartshorn should have known the lien was greater than the $14,098.77 figure provided by [Claims Adjuster]." *Id.* at 140a. The WCJ based this finding on Attorney Hartshorn's acknowledgement that he believed Claimant was receiving wages in lieu of compensation, the wage loss figure provided by Claims Adjuster did not match Claimant's testimony, Claimant's vocational expert supported that the lien amount was incorrect, and Attorney Hartshorn utilized a

15

higher past lost earnings figure in his settlement memorandum. *Id.* Consideration and rejection of testimony, which is what occurred here, does not constitute capricious disregard. *Williams*, 862 A.2d at 145.

As to the second issue, we reject Claimant's argument that her subrogation lien should be limited by equitable considerations, when she relied on an incorrect figure provided by Claims Adjuster. We are bound by *Growth Horizons, Inc.* and *Thompson* which hold that an employer's subrogation under Section 319 of the Act is absolute, and it may not be reduced without an employer's consent or in the absence of an employer's deliberate bad faith. There is no dispute that Employer here made a unilateral mistake in its initial calculation of the subrogation lien, but there is also no evidence of fraud, duress, or bad faith. Claimant does not challenge or discuss the WCJ's finding that Attorney Hartshorn should have known that the lien amount provided by Claims Adjuster was incorrect but urges the Court to provide equitable relief to Claimant on the subrogation lien owed. We reject Claimant's argument on this issue, based on binding precedent from *Growth Horizons, Inc.* and *Thompson*, which hold that Employer is entitled to its full subrogation lien under the facts presented.

Accordingly, the Board's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Janelle Newsome,                          :
                                          :
                    Petitioner            :
                                          :
          v.                              : No. 50 C.D. 2023
                                          :
City of Philadelphia                      :
(Workers' Compensation                    :
Appeal Board),                            :
                                          :
                    Respondent            :

# **O R D E R**

AND NOW, this 15th day of July, 2024, the order of the Workers' Compensation Appeal Board, dated December 30, 2022, is AFFIRMED.

_____

MICHAEL H. WOJCIK, Judge